317 So.2d 177 (1975)
STATE of Louisiana
v.
Dannie Paul TRUSS.
No. 55979.
Supreme Court of Louisiana.
July 25, 1975.
Donald T. W. Phelps, Seale, Smith & Phelps, Baton Rouge, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., John Sinquefield, Asst. Dist. Atty., for plaintiff-respondent.
DIXON, Justice.
Dannie Paul Truss was arrested May 25, 1974; on October 15, 1974 a bill of information was filed charging him with possession of heroin in violation of R.S. 40:966(C). A motion to suppress was denied. On defendant's application, we granted writs because of what appeared to be palpable error in the ruling of the trial judge.
Three witnesses testified at the motion to suppressa companion of the defendant and the two arresting officers. For the purposes of this opinion, we accept the version of the incident as related by the officers. At about 1:00 o'clock in the morning two young seamen alighted from a bus from New Orleans at the Baton Rouge bus station. They were observed by *178 two uniformed patrolmen who were in the bus station, about to leave from the rear door. The patrolmen said that Truss saw the police through the glass door, "got a very startled look on his face," moved back a little and "continued on down the platform of the bus station." Truss and his companion, according to the police, were about to walk around the rear of the bus station and down the driveway when the police called to them and asked them to return. The police then demanded identification, which was produced. At that point, one officer "patted down" the defendant, and noted what the officer described as a "bulge" in the right hand pocket of defendant's cardigan sweater. The officer removed the object from the pocket. It turned out to be a penny match box with a hypodermic syringe taped to it. The match box contained heroin, and defendant's arrest followed. One officer added that the defendant "appeared to be as being. . . a foreigner . . ." One officer described the defendant's actions as "darting to the right," a movement which he explained as "sort of walking sort of fast."
The policemen seemed to attempt to justify the warrantless search under the Louisiana "stop and frisk" statute. In brief before us, the State attempts to support its position with State v. Scott, 307 So.2d 291 (La.1975) and State v. Williams, 304 So.2d 311 (La.1974).
State v. Scott, supra, is inapplicable. In that case, we found adequate and reasonable grounds to support an investigatory stop (an armed robbery by persons whose descriptions fit some of the occupants of an automobile) and a subsequent seizure of evidence which was either in plain view or found in the course of a consent search. The officers in the case before us had no information about the commission of any offense which might have justified stopping the defendant.
Neither is State v. Williams, supra, applicable. There, police observed the defendant deposit a cardboard box containing fourteen packages of stolen weiners on the sidewalk and walk away startled, as the police drove up. Here, there was nothing in the actions of defendant to indicate the commission of an offense.
Nor does the "stop and frisk" statute validate this warrantless search. That statute, C.Cr.P. 215.1, only gives a law enforcement officer the right to stop a person in a public place when the officer has reasonable grounds to believe that the person stopped is committing a crime, has committed a crime, or is about to commit a crime. The statute further grants the police the right to "search the outer clothing" only when the officer "reasonably suspects that he is in danger of life or limb." See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); State v. Saia, 302 So.2d 869 (La.1974).
In Peters v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), one of the Terry (Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) trio of cases, the court stated:
". . . deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." (Emphasis added). 392 U.S. 40, at 66, 67, 88 S.Ct. 1889 at 1904.
In Peters, the arresting officer reasonably concluded that someone was breaking into his apartment; he then observed the defendants in the hall immediately after the attempted break in fleeing for the stairs. The flight of the suspects was reasonably connected with the criminal activity reasonably known to have happened. To the contrary, in the case before us, the officers observed only what they thought to be suspicious activity. There was no reasonable connection between this activity *179 and known criminal conduct. Mere suspicious activity, without any relationship to law violation, is not sufficient basis for police interference with the freedom of an individual.
The officers' testimony in this case shows that they did not have reasonable grounds to stop and search the defendant. A startled look at the sight of a police officer is not a sufficient indication of criminal activity to justify an investigatory stop or arrest.
Accordingly, the district court judgment on the motion to suppress is reversed, the motion to suppress is sustained, and the case is remanded to the district court.
SANDERS, C.J., dissents with written reasons.
SUMMERS, J., dissents and assigns reasons.
SANDERS, Chief Justice (dissenting).
Under the restrictive rule announced in the recent decision of this Court in State v. Saia, La., 302 So.2d 869 (1974), this conviction has to be reversed. However, I dissented in that case. I am still of the view that the decision is erroneous and imposes a greater restriction on Louisiana law enforcement officers in making an investigatory stop than that prevailing in other states under federal and state decisions.
The test under the Louisiana "stop and frisk" statute, LSA-C.Cr.P. Art. 215.1, is whether an officer "reasonably suspects" that a crime has been committed or is about to be committed. State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). In my opinion, the circumstances here were such as to give rise to a reasonable suspicion. Hence, the stop and frisk were valid.
For the reasons assigned, I respectfully dissent.