359 So.2d 986 (1978)
STATE of Louisiana
v.
Alton M. DAVIS.
No. 61420.
Supreme Court of Louisiana.
June 19, 1978.
*987 Harold Douglas, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joseph E. Roberts, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
This case raises the question of whether a policeman has the right to stop a citizen for questioning merely because he is smoking a hand-rolled cigarette. We answer the question in the negative and reverse the judgment of the trial court for the reasons hereinafter assigned.
The defendant was charged with possession with intent to distribute heroin in violation of La.R.S. 40:966. After a trial by a judge he was found guilty of possession of heroin. Defendant was adjudged a multiple offender and sentenced to twenty years at hard labor without benefit of parole, probation or suspension of sentence.
Defendant's sole contention on appeal is that the trial court erred in denying his motion to suppress certain physical evidence on the ground that it was obtained as the result of an unconstitutional search.
At approximately 10:00 a. m. on July 27, 1977 two police officers in a marked patrol car stopped at an intersection in New Orleans. The defendant, riding a bicycle, passed in front of the patrol car at a distance of about twelve to fifteen feet. The officers observed that he was smoking a hand-rolled cigarette. In order to stop the defendant for the purpose of inspecting the cigarette, the officers drove around the block and got out of their car as he approached. *988 Apparently there were no obstructions to the officers' view of the defendant because they testified that the defendant discarded the cigarette as they circled the block. Although the defendant no longer had the cigarette, the officers accosted him demanding to know where it was. They testified that at this point they detected the odor of marijuana on the defendant.[1] The defendant denied having such a cigarette and the officers were unable to find it in the area. The officers testified that after they questioned the defendant for about three minutes he became "irate," raised his arms over his head, and told the officers he would hurt them if they touched him. At that point the officers informed the defendant that he was under arrest for assault and ordered him to place his hands on the squad car. After a brief scuffle, the defendant was subdued and handcuffed. A search of the defendant's person revealed several marijuana cigarettes in his front pocket and an envelope containing fifty tin foil packets of heroin in his left rear pocket. The defendant was placed under arrest for possession of heroin and marijuana, resisting arrest, and assault.
In the judicial interpretation of our constitution's guaranty against unreasonable searches and seizures,[2] and its federal counterpart,[3] two principles have evolved. Before a police officer may make an investigatory stop he must reasonably suspect that the person has committed or is about to commit a criminal offense. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Sims, 350 So.2d 1189 (La.1977); State v. Smith, 347 So.2d 1127 (La.1977); State v. Kinneman, 337 So.2d 441 (La.1976); State v. Cook, 332 So.2d 760 (La.1976); State v. Truss, 317 So.2d 177 (La.1975); State v. Saia, 302 So.2d 869 (La. 1974); cf. La.C.Cr.P. art. 215.1. Before a police officer without a warrant may arrest a person he must have probable cause to believe that the person has committed a criminal offense. State v. Ranker, 343 So.2d 189 (La.1977); State v. Jackson, 337 So.2d 508 (La.1976); State v. Scott, 320 So.2d 538 (La.1975); State v. Terracina, 309 So.2d 271 (La.1975); cf. La.C.Cr.P. art. 213.
The State concedes in brief that the police officers did not have probable cause to arrest or search the defendant when they made the initial stop. Nevertheless, the State contends, there was probable cause to arrest the defendant for assault after he threatened the police officers with bodily harm and raised his arms in an apparent attempt to strike one of the officers. Carrying this argument to its logical conclusion the State contends that the warrantless search of the defendant's person was permissible as a search incidental to a lawful arrest under the principle of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
The State's position ignores the question of the legality of the initial stop in this case, which depends on whether or not the officers had reasonable cause to suspect Davis of unlawful activity. The officers testified that they in fact suspected him of smoking marijuana. However, in order to justify their actions in stopping the defendant for questioning there must have been reasonable objective grounds for their suspicions.[4] *989 The record designated for our review will not support a conclusion that such grounds existed before the officers stopped the defendant.
The officers testified that Davis' physical movements in smoking and discarding the cigarette were not furtive or suspicious. The cigarette was rolled in white cigarette paper in the same manner as a hand-rolled tobacco cigarette. Defense counsel demonstrated on cross-examination of the officers that they could not, at a distance, readily distinguish between tobacco and marijuana hand-rolled cigarettes. The officers testified that as Davis passed in front of the patrol car he held the cigarette between his thumb and index finger in his slightly cupped hand, a style of smoking they had observed among some users of marijuana. However, common knowledge and the evidence in this case do not indicate that the mere holding of a hand-rolled cigarette in this manner is a characteristic so restricted to marijuana smokers as to arouse reasonable suspicions. This is particularly so in the instant case in which the defendant, who was riding his bicycle on a public street at 10:00 a. m., reasonably could have cupped his hand to shield his cigarette from the wind.
Because the officers' actions in stopping the defendant amounted to an unreasonable seizure, the evidence produced as a result was tainted and inadmissible. The officers' actions in placing defendant under arrest for assault three minutes after the initial stop were direct results of the initial illegality. The causal connection between the unlawful conduct and the seizure of the evidence introduced at the trial had not become so attenuated as to dissipate the taint of the primary illegality. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1971); State v. Scott, 355 So.2d 231 (La.1978); State v. Jenkins, 340 So.2d 157 (La.1976).
For the reasons stated the defendant's conviction and sentence are reversed, the motion to suppress is granted, and the case is remanded for a new trial in accordance with the views expressed in this opinion.
NOTES
[1] At the motion to suppress hearing one of the officers admitted on cross-examination that it is possible for a substance other than marijuana to emit an odor similar to that of marijuana.
[2] La.Const.1974, Art. 1, § 5 provides:

"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
[3] U.S.Const. Amend. 4, provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[4] "* * * In order to assess the reasonableness of [an officer's] conduct as a general proposition, it is necessary `first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is `no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. And simple `"good faith on the part of the arresting officer is not good enough." . . . If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police.'" Terry v. Ohio, 392 U.S. 1, 20-22, 88 S.Ct. 1868, 1879, 1880, 20 L.Ed.2d 889 (1968) (citations and footnotes omitted).