TATE, Justice.
The defendant appeals his convictions on two counts of violations of La.R.S. 40:966, the possession of heroin with intent to distribute (Count 1) and the possession of cocaine with intent to distribute (Count 2). The sole assignment of error is directed at the trial court’s denial of his motion to suppress the drugs as unconstitutionally seized.
The drugs were found and seized as a result of a search conducted subsequent to the defendant Washington’s detention at an airport by federal agents. The latter were scanning the deplaning passengers for possible narcotics couriers and stopped the defendant for questioning.

The Issue and Applicable Legal Principles

As the state’s brief states: “The key issue before this court is whether or not the initial investigatory stop by the federal agents and the subsequent detention for identification purposes, arrest, search and seizure, was constitutionally valid in view of the surrounding circumstances.”
La.C.Cr.P. art. 215.1(A) authorizes a law enforcement official to “stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and an explanation of his actions.”
As we summarized in State v. Smith, 347 So.2d 1127, 1128 (La.1977):
“The right of the police to make an investigatory stop must be based upon reasonable cause sufficient to cause them to suspect the detainee of past, present, or imminent criminal conduct. State v. Weathers, 320 So.2d 892 (La.1975); State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). As these decisions note, the reasonable cause must be determined under the facts of each case, by whether the officers had sufficient knowledge of particular circumstances sufficient to permit them to infringe upon the individual’s right to be left alone free of government interference with his liberty.
“If, however, the officers do not have the right to make an investigatory stop, evidence seized or otherwise obtained as a result thereof cannot constitutionally be admitted into evidence against a criminally accused. State v. Truss, 317 So.2d 177 (La.1975); State v. Finklea, 313 So.2d 224 (La.1975); State v. Jones, 308 So.2d 790 (La.1975); State v. Saia, 302 So.2d 869 (La.1974). * * * ”

The Initial Stop

The two federal agents were scanning passengers from a flight which originated in Los Angeles, because that city was known as a drug source center. They observed that the. defendant Washington looked nervously around, and so they followed him.
Washington kept looking around as he walked up the concourse to the airport lobby, went into a restroom, came out, and then used a telephone. Washington then went down to the baggage area, still looking around.
When Washington turned to leave the baggage area, the officers stopped him. The officer admitted that the only basis for stopping Washington at that time was “that he appeared to be nervous when he was walking through the concourse, because he kept on looking over his shoulder, and he made a telephone call,” and they were “under the assumption that he arrived from Los Angeles.” Tr. 10. The agents apparently felt that these facts, together with the circumstance that Washington approached the baggage counter but did not at the time claim his baggage,[1] met a profile common to drug couriers.
These facts upon which the stop was based are at least equally consistent with innocent behavior, such as the actions of a deplaning passenger expecting to be met at the airport by someone he does not find there. They do not furnish reasonable cause to suspect the individual of unlawful *960 activity on the basis of specific and articula-ble facts sufficient to furnish objective grounds for the police suspicion, as is constitutionally and statutorily required before governmental agents may stop an individual and infringe upon his right to be left alone. State v. Davis, 359 So.2d 986 (La.1978); State v. Ryan, 358 So.2d 1274 (La.1978).
This conclusion is consistent with almost every decision concerning similar facts.
In State v. Saia, 302 So.2d 869 (La.1974), we invalidated a forcible stop which was made on no other basis than the defendant’s emergence from a residence suspected of being a drug traffic center. In State v. Trass, 317 So.2d 177 (La.1975), we held that a mere startled look when observing police did not amount to reasonable cause to stop and frisk. In State v. Kinnemann, 337 So.2d 441 (La.1976) a stop of a vehicle and subsequent discovery of contraband was ruled by us to have been made without probable cause, where the only basis for the stop was the observation by police that the defendant emerged from a “drug center” holding two paper bags. See also State v. Davis, 359 So.2d 986 (La.1978) (person smoking hand-rolled cigarette who threw it away when he saw officers, unlawfully stopped as a suspected marijuana smoker).
Other courts have held that the circumstance that the individual at the airport had the characteristics of the “profile” of a drug courier do not by themselves justify an invasion of his right to privacy by stopping and questioning him, at least when they indeed are consistent with innocent behavior. While the circumstance may be a factor partially justifying a suspicion, there must be additional articulable facts or reliable information which indicate that the suspect himself is engaged in criminal activity.
See: United States v. Pope, 561 F.2d 663, 668 (CA 6, 1977); United States v. Lewis, 556 F.2d 385, 389 (CA 6, 1977); United States v. McCaleb, 552 F.2d 717 (CA 6, 1977).[2]
The evidence obtained as a direct result of this unlawful stop, based upon then-unfounded suspicion, is tainted and thus constitutionally inadmissible into evidence against the accused. State v. Davis, 359 So.2d 986 (La.1978); State v. Smith, 347 So.2d 1127 (La.1977).[3] The trial court was in error in overruling the defendant’s motion to suppress such evidence.
Accordingly, we reverse the conviction and sentence, and we remand the case to the district court for a new trial in accordance with law.
REVERSED AND REMANDED.
SANDERS, C. J., and SUMMERS, J., dissent.
DIXON, J., concurs with reasons.
MARCUS, J., dissents and assigns reasons.

. I.e., although they did not then know whether he had any baggage, or whether he had in fact come from Los Angeles instead of from an intermediate stop.

. Illuminative of the issue are also decisions concerning whether suspicious behavior at the airport, together with prearrival information indicating unlawful activity on the part of the arriving passenger, justify the passenger’s detention by narcotics agents. United States v. Gill, 555 F.2d 597 (CA 6, 1977); United States v. Craemer, 555 F.2d 594 (CA 6, 1977); United States v. Hunter, 550 F.2d 1066 (CA 6, 1977); United States v. Scott, 545 F.2d 38 (CA 8, 1976).

. When the federal agents stopped the accused, they found he was carrying a ticket in a different name than his driver’s license. They took his baggage check from him and brought him and his suitcase to their office. When he refused to consent to their search of his suitcase, they arrested him, returned the suitcase to the baggage counter, had a trained dog sniff it (when it seized the suitcase and barked, allegedly they then had probable cause to believe the suitcase had drugs in it), and then obtained a search warrant based upon the indicia they had obtained as a result of their illegal stop and their illegal seizure of the accused’s baggage check.
In view of our conclusion that the fruits of the initial illegal stop are inadmissible, it is unnecessary to note further that, even if the initial stop had been justified, no probable cause for the detention (arrest) of the individual and the seizure of his baggage check was furnished by the circumstance that his ticket was in another name than his driver’s license, in absence of additional specific acts or reliable information indicating unlawful activity on his part. See, e.g., the decisions cited in footnote 2.