366 So.2d 1348 (1978)
STATE of Louisiana
v.
Michael MATTHEWS.
No. 62475.
Supreme Court of Louisiana.
December 15, 1978.
*1349 George A. Blair, III, Student Practitioner, William J. O'Hara, III, Supervising Atty., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., William Maxwell, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
DENNIS, Justice.
As a result of being stopped for questioning by police officers at an airport, defendant Michael Matthews was charged with possession with intent to distribute PCP, La.R.S. 40:968. Defendant moved to suppress *1350 the drugs which were seized as evidence from his suitcase immediately following the investigatory stop. After an evidentiary hearing the district court denied defendant's motion. Defendant waived his right to trial by jury, and by stipulation his case was tried by a judge on the basis of the suppression hearing evidence and police officers' reports. The defendant was found guilty as charged and sentenced to serve five years at hard labor.
On appeal, the defendant's single assignment of error specifies, as just cause for reversal of his conviction, the trial court's denial of his motion to suppress the drugs as unconstitutionally seized evidence.
At approximately 8:10 a.m. on September 27, 1977, the defendant flew into New Orleans International Airport aboard Delta Airlines flight number 1080 from Los Angeles. Two plainclothes officers, Sergeant Schwabe of the Jefferson Parish Sheriff's Office, Narcotics Division, and Agent Raymond Eagen of the Drug Enforcement Administration, were assigned to the airport on that morning. The officers were carefully watching passengers disembarking from certain flights to detect possible drug traffic at the airport. They had received information describing a number of persons who were suspected of transporting heroin into the New Orleans area from the West Coast. Because defendant's physical characteristics were somewhat similar to one of the suspected couriers, i. e., defendant was a young black man of average weight and height, the officers decided to place him under surveillance.
The officers followed the defendant through the airport terminal. They testified that the defendant acted "nervous." At first he lagged behind the other deplaning passengers, but upon seeing a uniformed policeman he quickly stepped up into the crowd. Later he repeated this procedure upon seeing the two plainclothesmen following him. Several times while traversing the terminal he looked back in the opposite direction from which he was walking. When the defendant reached the baggage claim area, the officers noticed that he picked up a single piece of luggage and exited the area without surrendering his claim check. At this point the officers stopped the defendant and asked his name. The defendant replied that his name was "Darryl Pourray," but he was unable to produce any identification. The officers then asked the defendant if he had an airline ticket. The defendant denied having a ticket, but the officers pointed out that a ticket envelope was protruding from his coat pocket. When he surrendered it at their request, the officers found that the ticket holder was listed as "Michael Matthews." The defendant was then advised of his rights and the officers escorted him to the Kenner Police room at the airport.
The officers informed the defendant that they were looking for drug couriers from the West Coast, and they again requested identification. The defendant said that he had a wallet in his suitcase. When he opened the suitcase to retrieve his wallet, the officers noticed a plastic bag containing numerous foil wrapped packages. The officers asked defendant what the bag was, but he replied that he did not see any bag. The officers seized the bag and upon examining the contents discovered cigarettes with a strong chemical odor, suggesting the presence of PCP. The defendant was then formally placed under arrest.
The prohibitions against unreasonable searches and seizures guaranteed by the Fourth Amendment and Article I, § 5 of the 1974 Louisiana Constitution are enforced by exclusionary rules which bar from use in a criminal prosecution evidence obtained in violation of these safeguards. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Tassin, 343 So.2d 681 (La.1977); State v. Paciera, 290 So.2d 681 (La.1974). Except in certain carefully defined classes of cases, a search of private property without consent is "unreasonable" unless it has been authorized by a valid search warrant. Camara v. Municipal Ct., 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Accordingly, non-consensual *1351 searches conducted outside the judicial process are per se unreasonablesubject only to a few specifically established and well-delineated exceptions, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the applicability of which the state must bear the burden of proving in order to defeat a defendant's motion to suppress evidence obtained by such a warrantless search. State v. Franklin, 353 So.2d 1315 (La.1978). Since the evidence is undisputed in the instant case that the officers stopped Matthews for investigation without either a warrant or his consent, it follows that the State was required to prove at the motion to suppress hearing that the officers' conduct in obtaining the evidence fell within one of the carefully defined classes of cases in which a governmental search is permitted without a valid warrant.
Every person's right to be secure in his person against unreasonable searches, seizures or invasions of privacy includes the right to be free from unreasonable detention by a police officer. Before a police officer may stop a person for investigatory purposes he must reasonably suspect that the person has committed or is about to commit a criminal offense. In justifying the particular intrusion the police officer must be able to point to specific and articulable acts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. If the detaining officer does not have objectively reasonable cause to suspect the person of criminal activity, evidence seized or otherwise obtained as a direct result of the detention cannot constitutionally be admitted into evidence against him at trial. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Washington, 364 So.2d 958 (La.1978), No. 62,254; State v. Davis, 359 So.2d 986 (La.1978); State v. Smith, 347 So.2d 1127 (La.1977); La.C.Cr.P. art. 215.1.
Based on these authorities, this Court, at our last sitting, declared invalid a similar investigatory stop at the same airport. State v. Washington, supra. The defendant in that case disembarked from a flight originating in Los Angeles, appeared nervous, made a telephone call and approached the baggage counter without claiming his baggage. We held that these actions did not constitute grounds to justify an investigatory stop because the passenger's activity was equally consistent with innocent behavior and did not amount to specific and articulable facts which, taken together with rational inferences therefrom, would furnish objective grounds for the officers to suspect the individual of unlawful activity.
The instant case is not distinguishable from State v. Washington, supra, in any legally relevant respect. At the time the officers made the initial stop in the present case, they were aware that the defendant had arrived on a flight from Los Angeles; that he appeared nervous and evasive; that he had only one piece of luggage;[1] and that he had come out of the baggage claim area without surrendering his claim check.[2] These circumstances alone do not give rise to a reasonable suspicion that criminal activity is afoot; all of these activities are equally consistent with innocent behavior. See, e. g., State v. Davis, supra; State v. Smith, supra; State v. Kinneman, 337 So.2d 441 (La.1978); State v. Truss, 317 So.2d 177 (La.1975); State v. Saia, 302 So.2d 869 (La.1974). The only possible basis for distinguishing the present case from State v. Washington, supra, is the fact that the officers in the present case claimed to have an informant's tip describing the defendant as a drug courier. Accordingly, *1352 we must examine in some detail the nature and content of this information.
The tip upon which the state relies in this case was given to the investigating officers by an agent within the Intelligence Unit of the Drug Enforcement Administration. The record does not disclose whether the agent's information was based on personal observation or an informant's tip, whether the source of the information, if other than the agent's observations, was credible, or whether any underlying facts were given to establish the reliability of the information. Even more significant, however, is the content of the description given. The officers claimed that they had a number of descriptions of possible couriers who would be bringing heroin into the New Orleans area from the West Coast. One of the officers admitted that the descriptions were very vague and general. Officer Eagen testified that "[a]ll of [the suspect couriers] were black. All of them were young males. We had two black females." Officer Eagen explained that they followed the defendant because:
"He fit the general description.And fit the general height/weight, and description that we had, which is average. I don't remember exactly what they were but it wasn't anything spectacular. It wasn't a six foot five or five foot five or whatever."
Officer Schwabe testified that the description was of a thin black male about 5' 8" tall. The record reveals that the defendant was, in fact, a twenty year old black male who weighed 110 pounds and was 5' 5" tall at the time of the events described herein. The tip did not provide the suspect's name; it did not state which airline the suspect would arrive on; it did not disclose when the suspect would arrive; it did not describe his clothes or luggage. The tip, which purported to describe an individual heroin courier, would also describe virtually every young black person arriving from the West Coast. Such a vague and inclusive description would have had only marginal probative value even if it had been received from a reliable informant who had supplied underlying circumstances to substantiate the information.
The investigating officers did not have reasonable cause to suspect Michael Matthews of unlawful activity. At the time the stop was made, the officers knew the defendant had arrived on a flight from Los Angeles; that he appeared nervous and evasive; that he did not surrender his baggage claim check when he picked up his suitcase. Additionally, the officers had received a very vague description of a suspected heroin courier. Insofar as the record discloses, the investigating officers were not aware of whether the original source of the information was a credible person or whether the information itself was reliable. Accordingly, the specific and articulable facts known to the officers before the investigatory stop, together with the rational inferences which might be drawn from those facts, did not warrant their intrusion upon Michael Matthews' right to be secure in his person against an invasion of his privacy.
Because the initial stop was defective, the information obtained thereby could not be considered by the officers in finding probable cause to arrest. The PCP was discovered in the defendant's suitcase as a direct result of the unlawful detention, and therefore must be suppressed as evidence.
The defendant's conviction and sentence are reversed, the motion to suppress is granted, and the case is remanded for a new trial consistent with the laws and views herein expressed.
REVERSED AND REMANDED.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., concur.
NOTES
[1] These first three circumstances, arrival from a drug source city, nervousness, and limited luggage, are commonly cited as elements of a drug courier "profile". However, the satisfaction of a drug courier "profile" does not furnish reasonable cause to detain a person for questioning. State v. Washington, supra; United States v. Pope, 561 F.2d 663 (6th Cir. 1977); United States v. McCaleb, 552 F.2d 717 (6th Cir. 1977).
[2] The state has not elaborated on the significance of the defendant's failure to surrender his claim check. Such an action creates very little, if any, inference of the defendant's involvement in any past, present, or future criminal activity.