421 So.2d 874 (1982)
STATE of Louisiana
v.
Melvin J. WILLIAMS.
No. 82-K-0084.
Supreme Court of Louisiana.
October 18, 1982.
Rehearing Denied November 19, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Nancy Sharpe, Louise S. Korns, Asst. Dist. Attys., for plaintiff-appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
*875 CALOGERO, Justice.
The matter presented in this appeal is whether a weapon seizure made during an investigatory stop was legal. That legality, in turn, rests upon whether at the time of the stop it was reasonable to suspect that the defendant was "committing, [had] committed or [was] about to commit a felony or a misdemeanor." La.C.Cr.P. art. 215.1. Upon review, we determine that there was reasonable cause to stop the defendant to "demand of him his name, address and an explanation of his actions," and that the seizure of the weapon thereafter was legal.
Defendant was charged by bill of information with possession of a firearm as a convicted felon in violation of R.S. 14:95.1. After the trial court denied his motion to suppress the evidence, he withdrew his former plea and entered a plea of guilty as charged, reserving his right to appeal the court's ruling on the suppression issue. State v. Crosby, 338 So.2d 584 (La.1976). That same day, the trial court sentenced him to three years' imprisonment at hard labor. Defendant now appeals his conviction and sentence to this Court, urging the single assignment of error filed below. Upon review we determine that the trial court was correct in its denial of the motion to suppress. We therefore affirm the defendant's conviction and sentence.
The events which resulted in Williams' arrest were the following: About midnight on April 14, 1981, while on a routine patrol in an unmarked vehicle in the vicinity of the Lafitte Housing Project, Officers Wininger, Kuhn, and Gifford of the New Orleans Police Felony Action Squad saw a car parked in the 1800 block of Orleans Avenue and occupied by two men, with three men standing outside the car on the passenger side. After circling a few blocks, the officers returned, parked about one hundred yards behind the vehicle to observe the group for five or ten minutes. During this brief surveillance, the officers saw at least one of the men reach his hand into the car and then retract it in a manner which prompted the officers to suspect that a drug transaction was taking place. Officers Kuhn and Wininger neared the scene in the patrol car; Officer Gifford approached on foot. Thereupon the three persons standing by the car started walking away very quickly, leaving the defendant seated at the wheel with a passenger next to him in the front seat. One of those leaving on foot put his hand to his mouth and started swallowing something. Officer Gifford ordered the three men to stop. Simultaneously, the defendant started his car in an apparent effort to leave the scene. Officer Kuhn pulled the police car in front of the defendant's vehicle, preventing his departure. Officers Kuhn and Wininger exited their car, identified themselves and asked the defendant and his passenger to get out of the car. As the passenger did so, Officer Wininger saw a revolver on the floorboard of the car, protruding halfway from under the front seat. He seized it. When it was determined that the gun belonged to Melvin Williams and that Melvin Williams was a convicted felon, he was arrested and charged with violating La.R.S. 14:95.1.
The defendant contends in this appeal that the trial court committed reversible error, because of the Fourth Amendment, in finding that the police officers had reasonable cause to make the stop. We do not agree.
To assess the validity of an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its Louisiana statutory equivalent, C.Cr.P. 215.-1, the critical inquiry focuses on the knowledge in the officers' possession at the time of the stop and whether that knowledge constitutes reasonable cause for such a stop.
On the question of reasonable cause, we said in State v. Edsall, 385 So.2d 207 at 209 (La.1980):
Reasonable cause for an investigatory stop or detention is something less than probable cause. Nevertheless, it requires the detaining officer to have articulable knowledge of particular facts sufficient reasonably to suspect the detained person of criminal activity.
*876 In this case, the police did not have reasonable cause to make an investigatory stop when they first moved into the 1800 block of Orleans Avenue. Three men gathered around a car parked at the curb in the 1800 block of Orleans Avenue near midnight, one of them reaching inside momentarily, provided little more than a "hunch" on the part of the officers that a drug transaction had taken place. Mere suspicious activity is not a sufficient basis for police interference with an individual's freedom. Recent cases of this Court which exemplify this principle include State v. Truss, 317 So.2d 177 (La. 1975); State v. Finklea, 313 So.2d 224 (La. 1975) and State v. Saia, 302 So.2d 869 (La. 1974).
In Truss, the detention was held to be improper because the only articulable facts supporting it were that Truss, a young seaman, "got a very startled look on his face, `moved back a little' and `continued on down the platform of the bus station,' when he saw the police." 317 So.2d at 178.
In Finklea, supra at 226, citing Saia, supra, we found an investigatory stop was illegal because
[t]he police had no information of any crimeonly that a light colored Cadillac with loud mufflers had acted suspicious on a country road. [sic] ... The only incident noted by the State and the trial judge which occurred before the defendant was stopped and handcuffed (arrested) was the "flight." Flight alone, under these circumstances, cannot justify an arrest.
In Saia the stop was held to be invalid because the officers acted before they saw the glassine envelope in the defendant's hand. In essence they approached her because she had exited a residence the police suspected was an alleged drug outlet, had "put her hand inside the waistband of her pants and had turned around and walked back toward" the residence she had just left. (Emphasis in original.) 317 So.2d at 870.
More recently we have determined that, on the one hand, the police may engage anyone in conversation, and the mere incident of an officer's encountering an individual in a public place does not of itself restrain that person's freedom to walk away. State v. Duplessis, 391 So.2d 1116 (La.1980). On the other hand, officers may not stop or forcibly detain a person or approach citizens "under circumstances that make it seem that some form of detention is imminent unless they have probable cause to arrest the individual or reasonable grounds to detain the individual." State v. Duplessis, supra at 1117, quoting Saia, supra at 873.
In this case, the officers did not detain any one of the group of five on the simple strength of what they had seen just before approaching the group. Rather the detention took place when simultaneously Officers Wininger and Kuhn blocked the departure of defendant's car as Officer Gifford ordered the three pedestrians to stop. This event, or dual stop, took place after the trio hurriedly walked away as Officer Gifford approached, after one of their number went to his mouth with a substance which he swallowed and after the defendant on sight of the officer, turned on the ignition and attempted to leave in his car.
We find these circumstances are more closely akin to those in our jurisprudence where we have upheld the investigatory stop. State v. Wade, 390 So.2d 1309 (La. 1981); State v. Cook, 332 So.2d 760 (La. 1976).
The pertinent facts in Wade, supra at 1310 were as follows:
On January 24, 1979, at approximately 8:10 p.m., two plainclothes police officers were patrolling the New Orleans French Quarter in a blue and white "unmarked typical Ford LTD, the type police use". The officers observed the defendant, Robert Wade, walking in a hurried manner and continually turning his head "as if looking for someone". The officers decided to keep Wade under surveillance for a few minutes as they approached him from the rear in their vehicle. As the car drew nearer to Wade, he caught sight of it and immediately began to run. The officers felt that Wade's actions indicated *877 that he had just perpetrated a crime, so they decided to question him. The officers raced their vehicle until they had pulled alongside Wade. At that time, they stopped and jumped out of their vehicle, identified themselves as police officers, and blocked Wade's path, thereby stopping him.
In Cook, supra at 763:
[a]bout 9:00 p.m. in the evening, a police officer in his unmarked vehicle was maintaining a surveillance of an area in which robberies and purse-snatchings occurred nightly. He saw the defendant Cook, otherwise unknown to him, standing with his back against the corner of a building. Cook peeked surreptitiously around it several times, apparently looking at some pedestrians waiting some ten feet away (around the corner) at a bus stop.
This Court concluded in the Cook case that:
[t]he suspicious conduct occurred at night in an area of nighttime robberies and purse-snatchings. The conduct in question was consistent with an intention to commit this type of crime. The officer was reasonably entitled at that time to question Cook and to make an investigatory stop or detention for that purpose.
We conclude, therefore, in this case, that given the sudden departure of the trio at the approach of the police, given the furtive gesture of one of them and the coincident attempt at departure by defendant in his vehicle, the officers' hunch had flowered into reasonable suspicion, based on articulable facts that the defendant was "committing, [h]ad committed, or [was] about to commit a felony or a misdemeanor." At that point the officers were entitled to demand of defendant "his name, address and an explanation of his actions." La.C.Cr.P. art. 215.1.
In conjunction with an investigatory stop, a police officer may conduct a limited, self-protective search for weapons (usually a "pat down"). La.C.Cr.P. 215.1; Edsall, supra; Terry, supra. In this case, Officer Wininger saw a weapon on the floorboard of the car when the passenger exited. Although the officers then removed defendant from the car, considering the time and circumstances of the confrontation and the fact that the officers were outnumbered, it was not unreasonable for them to have taken hold of the gun for their own self-protection.
Here, as in State v. Reed, 388 So.2d 776 at 778 (La.1980) "[t]he exposed weapon was a source of potential danger to the officers' safety ... [and] it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." [citation omitted.]. Accordingly, the firearm discovered during the course of the investigatory stop was lawfully seized.

Decree
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs.
DIXON, C.J., respectfully dissents believing that the police had nothing but suspicion when they stopped defendant's car.
WATSON, J., dissents, believing there was no reasonable suspicion under the facts.