GAUDIN, Judge.
This case concerns a police investigatory stop and frisk in a high crime area at approximately 3:25 a.m. The search of Claude Ashbury for weapons produced cocaine and drug paraphernalia, and Ashbury was later convicted of possession of cocaine.
On appeal, Ashbury argued (1) that his motion to suppress evidence was incorrectly denied because there were no grounds for the stop and (2) that the trial judge in the 24th Judicial District Court erred in ordering an indigent to pay a probation fee as a special condition of probation. Ash-bury was sentenced to two years in parish prison, suspended, and placed on active probation for two years subject to these conditions:
(1) that he enroll in a drug rehabilitation program,
(2) that he submit to random drug testing throughout probation,
(3) that he continue working toward obtaining a G.E.D., and
(4)that he pay a monthly $20.00 probation fee.
Finding no reversible error in these assignments of error, we affirm Ashbury’s conviction and sentence. He pled guilty after his motion to suppress was denied, reserving his right to appeal the denial in accord with State v. Crosby, 338 So.2d 584 (La.1976).
ASSIGNMENT NO. 1
Ashbury contends in this assignment of error that there was no reasonable cause for police officer William Stravinsky to stop him on February 24, 1992 at about 3:25 a.m. The deputy was the only witness when the motion to suppress was heard.
Stravinsky said that he was alone in his automobile patrolling in a high crime and drug traffic area when he saw Ashbury “... appearing to hide from me, ducking behind the cars ...” Stravinsky stated that he “... sped up a little to question him ...” but Ashbury either walked very fast or ran into an alleyway. The officer exited his car and moments later came face-to-face with Ashbury when he (Ashbury) emerged from a hallway.
From Stravinsky’s testimony:
Q. How did he appear to you at that time when you were questioning him?
A. Uh, nervous and, uh, fidgety, appeared to maybe be un — under the influence of alcohol or drugs at the time.
Q. He appeared to be under the influence at that time?
A. Yeah, he was, uh, just like I said, nervous and fidgeting, uh, real incoherent, you know, really wasn’t sure what he was saying.
Q. Okay. Arid so then what happened? Now lemme ask you this. Are you familiar with this area?
A. Uh, yeah, uh, I patrol I’d say probably, uh, 85% of the time, that’s my assignment ...
Q. ... In that area? ...
A. ... is usually the Terrytown area.
Q. ... Okay, so you ...
*886 A. ... Yeah, yes sir I live near — I also live in the area. I’m real familiar with it.
Q. Okay. Go ahead.
A. Uh, at that time, due to his — you know his nervousness I began to, uh, pat down search over for his safety, as well as mine. Then, uh, I observed, uh, what appeared to be a mirror in his rear pocket. Uh, upon the pat down search, I felt a small lump which, uh, after pulling it out of his rear pocket, it turned out to be a cigarette lighter. It could have been a knife; a small pocket knife.
Uh, at that time, when I pulled out the mirror, two clear plastic bags came out with a white powder substance in it. I then asked the subject what — what this was, or, “Do you know what this is,” and he said, “Well, you know what this is”, and I said, “Well, why don’t you tell me what it is?” And he said, “Well, it’s cocaine.” And I said, “Well where did you get it?” And he said “About two blocks down the street,” which is the Fredericks and Nel area, which is a real high drug traffic area.
COURT REPORTER:
Fredericks and what?
MR. LEE:
Okay.
A. Fredericks and Nel. N-E-L, Nel Court.
Q. Was there anything unusual about the mirror?
A. Uh, yes sir. It had, uh, best that I can recall it had approximately six, uh, lines were etched in it. Uh, that from, uh, training experience I knew to be, you know, appeared to be like, uh, cocaine lines on there.
Q. Okay.
A. And, uh, it was drug paraphernalia.
Q. Then you placed him under arrest?
A. Yeah, and I advised him he was under arrest.
Under cross-examination, Stravinsky said that he had no reason to believe that Ash-bury was armed but that Ashbury’s hands were constantly moving and that he was very fidgety. Stravinsky said he conducted a “pat down” search for his safety.
The trial judge denied the motion to suppress, saying that she gave consideration to (1) the time, (2) the place (“... high crime area, where drugs occur ... ”), (3) the incoherent nature of the suspect, (4) Ash-bury’s attempt to elude the deputy and (5) the officer’s safety.
Reasonable cause for an investigatory stop is something less than probable cause and must be determined by the facts and circumstances of each case. In State v. Belton, 441 So.2d 1195 (La.1983), writs denied by the U.S. Supreme Court at 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984), the Court said at page 1198:
“The totality of the circumstances, ‘the whole picture’, must be considered in determining whether reasonable cause exists. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 ... Although flight, nervousness or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop ... this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. State v. Williams, 421 So.2d 874 (La.1982); State v. Wade, 390 So.2d 1309 (La.1980).”
After reviewing the totality of circumstances in Ashbury’s stop and search, we cannot say that the trial judge erred in rejecting the motion to suppress. A police officer, alone in a high crime area in the middle of the night questioning a nervous, incoherent suspect who had made an attempt to avoid contact with the deputy, would have, in our judgment, almost an absolute right to search for weapons.
ASSIGNMENT NO. 2
Ashbury complains about the monthly fee as a condition of probation. While an indigent defendant may not be sentenced to additional jail time and default of payment of a fine, the mere imposition of such is not unconstitutional. See State v. Johnson, 592 So.2d 818 (La.App. 5 Cir.1991).
*887 Also, Ashbury’s contention is premature. He is not claiming that he is unable to pay the fee. See State v. Johnson, supra., also Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).
AFFIRMED.