| iWALTZER, Judge.

STATEMENT OF THE CASE

Roger Fleming was charged by bill of information with possession of phencyclidine (commonly known as PCP), a violation of La.R.S. 40:966. He entered a plea of not guilty. The trial court found probable cause and denied Fleming’s motion to suppress evidence seized incident to an investigatory stop. Fleming sought review of the trial court’s judgment denying his motion to suppress the evidence in writ 95-K-0317, which this Court dismissed, holding that Fleming has an adequate remedy on appeal. A jury found Fleming guilty as charged. Following a multiple bill hearing, Fleming was found to be a fourth felony offender. Fleming was sentenced under the Habitual Offender statute to serve twenty years in the Department of Corrections. From that conviction and sentence, Fleming appeals. We affirm.

STATEMENT OF FACTS

On 9 December 1994, at approximately 11:30 p.m., Officers Michael Harrison, Gabriel Favaroth, and Fred Thompson were on routine patrol in a marked unit. As the officers approached the intersection of Willow Street and Jackson Avenue, they observed Fleming about half a block away holding an object in the air inspecting its contents. As Officer Harrison, the driver of the police car, sped up and approached Fleming, he observed the object to be a small, dark-jcolored2 glass bottle, like a McCormick seasonings bottle. Officer Harrison testified at the hearing on Fleming’s Motion to Suppress Evidence that this aroused his suspicion because it has been his experience that PCP is commonly packaged in this type of bottle. According to Officer Harrison, these bottles are not used on the street to hold vanilla or almond extract or food coloring. Officer Harrison testified that when Fleming observed the police car he immediately and nervously put the bottle in his left pocket. Believing that Fleming had possession of narcotics, Officer Harrison and his companions elected to stop Fleming. When conducting a patdown for weapons, Harrison smelled a very distinct aroma that he recognized as PCP. The smell of PCP in the bottle was so strong that months later, at the trial, Officer Harrison asked to be excused because he could still smell the fumes. Officer Favaroth during the patdown located the bottle Fleming had put into his pocket. Officer Favaroth removed the bottle, and the officers observed that the fumes and PCP aroma were coming from the bottle. Upon inspection, they found the bottle to contain what they believed to be PCP, placed Fleming under arrest and advised him of his rights. The bottle was placed into evidence, and the officer subsequently learned from the Crime Lab report that the bottle tested positive for PCP.
At trial Officer Harrison testified that at the time of the arrest, it was nighttime, but there was lighting on the street corner by which the officer could see Fleming and what he was doing. Because of the way Fleming was holding the bottle up and examining it, it was easy for the officer to see that it was approximately three inches tall and appeared to be a McCormick-type seasonings bottle, and the officers had an unobstructed view of Fleming.
|3Officer Favoroth testified that when he exited the car he smelled a distinct odor. According to Officer Favaroth, Fleming was cooperative, and did not flee or attempt to throw the bottle away. While Officer Favar-oth was conducting a pat down search he noticed that the odor he had noticed earlier was coming from the bottle that Fleming had placed in his pocket. All three officers testified that they immediately recognized the smell as PCP.
Officer Gabriel Favaroth testified that he was riding in the front passenger seat with Officers Thompson and Harrison on the night in question. He corroborated Officer Harrison’s testimony. He confirmed that the car was less than a block from Fleming when the Officers observed him holding up the seasonings bottle, and that the street lights made it possible to see clearly. Officer Fa-varoth was the first one out of the vehicle. He conducted a pat-down search, placing Fleming against a wall. He testified that the PCP fumes from Fleming’s bottle gave him a headache.
*1143 Officer Edgar Dunn, an NOPD forensic chemist, identified the substance from the bottle found in Fleming’s pocket as POP. He testified that it has a unique smell in its liquid form. Officer Dunn supervised Lome Porter, a criminalist with the NOPD who actually tested the substance and found it to be POP.

ERRORS PATENT

A review of the record for errors patent reveals none.
I ^ASSIGNMENT OF ERROR[1]
Fleming argues that reasonable suspicion did not exist to justify the investigatory stop. The sole contention on appeal is whether Fleming’s actions, standing on a street corner, raising a glass bottle, examining its contents, and placing the bottle in his pocket as the police approached are sufficient to excite a police officer’s reasonable suspicion, giving him reasonable cause to conduct an investigatory stop.
La. Const. Ait. 1, Sect. 5 provides in part: Section 5. Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search.
The Louisiana Supreme Court held that while the police may briefly detain and interrogate an individual, a less encroaching intrusion on the individual’s right to be free from governmental interference than an arrest, the police may do so only based upon reasonable, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal conduct. La. Code Crim.Proc. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Tucker, 626 So.2d 707, 710 (La.1993), rehearing granted and opinion reinstated on rehearing, 626 So.2d 720 (La.1993).
|5In Terry v. Ohio, the Court held that “where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot” the officer may briefly stop the suspicious person and make “reasonable inquiries” aimed at confirming or dispelling his suspicions. Terry further held that “when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,” the officer may conduct a patdown search “to determine whether the person is in fact carrying a weapon.” 392 U.S. at 24, 88 S.Ct. at 1881.
The courts of this State have further refined our understanding of reasonable cause. In State v. Key, 375 So.2d 1354 (La.1979), the Louisiana Supreme Court found that a defendant’s nervous conduct at the airport, coupled with his jogging to the bathroom and the fact that he had nervously purchased his airline ticket with small bills, and was known to have been arrested at the Atlanta Airport and charged with possession of heroin were insufficient to justify an investigatory stop. The court found that, except for the prior arrest, all of defendant’s conduct
was just as consistent with innocent as with illicit behavior. It did not provide the specific and articulable facts indicating criminal conduct sufficient to justify the instant investigatory stop. 375 So.2d at 1355.
Thus, we must determine whether Fleming’s conduct was as consistent with innocent as with illegal behavior.
Further elucidation was provided in State v. Davis, 359 So.2d 986 (La.1978). Officers in a marked patrol car saw defendant riding *1144 a bicycle and smoking a hand-rolled cigarette, holding it cupped in his hand. The officers believed the cigarette contained marijuana because it was hand-rolled, and that defendant was holding the cigarette in a manner typical of persons smoking 16marijuana. After the stop was made, the officers detected a strong odor of marijuana on defendant’s person. On cross-examination, defense counsel demonstrated that the officers could not, at a distance, readily distinguish between hand-rolled tobacco and marijuana cigarettes. The court suppressed the evidence, finding that defendant’s manner of smoking was not so restricted to marijuana smokers as to arouse reasonable suspicions, particularly since defendant could have been shielding the cigarette from the wind.
The totality of circumstances must be considered in determining whether or not reasonable cause exists. Further, to assess the reasonableness of an officer’s conduct it is necessary to balance the harm of invasion against the need to search or seize. State v. Scott, 566 So.2d 394 (La.1990); State v. Williams, 621 So.2d 199 (La.App. 4 Cir.1993).
Our inquiry is whether the trial court erred when it found that Fleming’s conduct, on a street corner at 11:30 p.m., raising a dark colored bottle, examining it and placing it in his pocket when he saw police approaching provides a reasonable, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal conduct.
The police testimony established that they saw Fleming examining a dark colored bottle, holding it to the light; that it is common for drug users and sellers to keep PCP in dark colored bottles to protect the perishable liquid from light; that the odor they smelled as they approached Fleming was the distinctive pungent odor of PCP; that they were able to see the bottle clearly from their position in the patrol ear. Fleming contends that the bottle could have contained vanilla or some other extract other than a controlled substance. We find that it was reasonable, considering the totality of the circumstances, for the officers to suspect that a man 17on the street near midnight examining the contents of a dark bottle was in possession of PCP. This suspicion was enhanced by the officers’ pre-stop recognition of the distinctive odor of PCP on Fleming’s person. Balancing Fleming’s privacy interest against society’s need to control access to and distribution of this extraordinarily destructive and dangerous drug, we find no error in the trial court’s determination not to suppress this evidence. The assignment of error is without merit.

CONVICTION AND SENTENCE AFFIRMED.

. On 14 November 1995, Fleming filed in this court a true copy of two assignments of error originally filed in the district court: first, denial of the motion to suppress; second, consideration of an enhanced misdemeanor as a felony resulting in an excessive sentence. The second assignment of error was not assigned or briefed in Fleming’s brief on this appeal, nor did counsel for appellant mention this assignment of error during oral argument. We consider as abandoned this assignment of error which has not been briefed or argued. Uniform Rules — Courts of Appeal, Rule 2-12.4; State v. Hawkins, 90-1235, (La.App. 4 Cir. 9/15/95), 667 So.2d 1070; State v. Bray, 548 So.2d 350 (La.App. 4 Cir.1989).