347 So.2d 1127 (1977)
STATE of Louisiana, Appellee,
v.
Ulysses SMITH, Appellant.
No. 58975.
Supreme Court of Louisiana.
July 1, 1977.
*1128 Patrick C. McGinity, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of possession of cocaine with intent to distribute it, La.R.S. 40:967, and sentenced to twenty-five years at hard labor. He appeals, relying upon a single assignment of error. By it, he complains of the denial of a motion to suppress evidence (the cocaine) as illegally seized.
The sole issue of this appeal concerns the legality of an initial stop of the accused by the police, which subsequently led to the finding of cocaine on his person.

(1)
A law enforcement officer is permitted by law to stop any person in a public place "whom he reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor * * *." La.C.Cr.P. art. 215.1. The prohibition against unreasonable searches and seizures of the person by our state and federal constitutions likewise requires this, at the minimum, as a basis for a governmental agent to invade the privacy or person of individuals living under our constitutions. State v. Kinneman, 337 So.2d 441 (La.1976).
The right of the police to make an investigatory stop must be based upon reasonable cause sufficient to cause them to suspect the detainee of past, present, or imminent criminal conduct. State v. Weathers, 320 So.2d 892 (La.1975); State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). As these decisions note, the reasonable cause must be determined under the facts of each case, by whether the officers had sufficient knowledge of particular circumstances sufficient to permit them to infringe upon that individual's right to be left alone free of government interference with his liberty.
If, however, the officers do not have the right to make an investigatory stop, evidence seized or otherwise obtained as the result thereof cannot constitutionally be admitted into evidence against a criminally accused. State v. Truss, 317 So.2d 177 (La.1975); State v. Finklea, 313 So.2d 224 (La. 1975); State v. Jones, 308 So.2d 790 (La.1975); State v. Saia, 302 So.2d 869 (La. 1974). This inadmissibility extends to property dropped or abandoned in response to an illegal stop. State v. Lawson, 256 La. 471, 236 So.2d 804 (1970).

(2)
Two uniformed police officers were on routine patrol in the neighborhood of a housing project. They observed the accused walking across a courtyard in which they were driving. They did not know the accused, who lived in the project.
They called to the accused to stop and to come to their police car. As we read the officer's testimony, the sole reason for the stop was: "We stop everyone we don't know in the area high crime area, a lot of narcotics traffic, numerous subjects with weapons, and armed robberies on pedestrians and business in the area." Tr. 5, see also Tr. 25, of the hearing on the motion.
The stop was made at noon on December 18, 1972. The accused was wearing a leather coat over two sweaters. The officers themselves did not remark upon the accused's clothing as any cause for their stop.[1]
The officers descended from the car. One officer checked the accused's identification papers and found them to be in order. The other frisked (patted down) the accused from inside to out, starting with the pants pockets, the sweaters, and then the outside leather jacket. He felt something (soft) in the left outer pocket; when he grabbed it, *1129 the defendant ran. The officers tackled the accused and arrested him.
The soft object in the pocket was a plastic bag which (upon analysis) contained cocaine. Additional cocaine was found on the accused's person after he was taken to the hospital for treatment of lacerations received in the encounter.
The state argues in brief the particular causes supplying reasonable cause for this stop and frisk were "(1) the high crime rate of the area, (2) the fact that this man was unknown to the officers, and (3) that he was heavily clothed on this sunny day gave the officers reasonable cause to stop the defendant."

(3)
The evidence is devoid of any basis by which these law enforcement officers could reasonably suspect that the accused was committing or about to commit a crime, or that he had committed one. Police officers are not entitled to stop at will any person in a high-crime area just because that person is unknown to them, nor because he is wearing a leather jacket on a warm December day.
To repeat what we have consistently emphasized, under La.C.Cr.P. art. 215.1, the governmental officer must have reasonable cause to stop and question the particular individual detained. If based solely upon the officer's observation of that individual at that time, the stop must be based upon a reasonable belief, justified by some conduct on the individual's part, that he has been, is, or is about to be engaged in criminal conduct. State v. Cook, 332 So.2d 760 (La. 1976). We find here no basis for any such reasonable suspicion of this individual walking in broad daylight in the courtyard of the housing project in which he lived.

Conclusion
For the reasons stated, the product of the illegal stop is not admissible in evidence, the motion to suppress was incorrectly denied and must be sustained, the conviction and sentence must be set aside, and this case must be remanded to the district court for a new trial in accordance with law.
REVERSED AND REMANDED FOR A NEW TRIAL.
SUMMERS, J., dissents for the reasons assigned.
SANDERS, C. J., dissents for the reasons assigned by SUMMERS, J.
SUMMERS, Justice (dissenting).
Appellant, Ulysses Smith, was charged on January 12, 1973 by bill of information with willful and unlawful possession with intent to distribute a controlled dangerous substance, cocaine. La.Rev.Stat. 40:967. A motion to suppress was filed by appellant in which it was alleged that cocaine was unlawfully seized from his person as a result of a warrantless search on December 18, 1972. The motion was denied, and the case was set for trial on June 27, 1973.
The trial commenced, and a jury was impanelled and sworn. The case was recessed for a few minutes to enable the court to dispose of other matters on the docket. Counsel for defendant requested and obtained permission of the court for his client to accompany him into the hallway to telephone witnesses. Defendant was discharged on his bond to use the phone. Minutes later, counsel for the defendant returned to the courtroom and informed the trial judge that his client had absconded by running down the stairs and out of the building. A mistrial was declared. Approximately seventeen months later appellant was apprehended and again brought to trial. This trial also resulted in a mistrial in October 1974. Finally, on January 9, 1975, appellant was again tried. This trial concluded with a unanimous verdict of guilty, after which defendant was sentenced to twenty-five years at hard labor.
Appellant contends that the trial court erred in denying his motion to suppress.
Two uniformed policemen of the New Orleans Urban Squad, Officers Giangrosso and Dusset, were on routine car patrol in the vicinity of 2600 Congress Street at noontime on December 18, 1972. The officers *1130 described the area as "a high crime area, a lot of narcotic traffic, numerous subjects with weapons, and armed robberies on pedestrians and businesses . . . ." As was their habit, the officers drove onto the grounds of the Florida Housing Project from Gallier Street, and as they proceeded through the courtyard toward Congress Street, they observed Smith walking in the same direction. They had never seen him before. Smith was wearing a three-quarter length leather coat over a dark brown coat sweater, which, in turn, covered a black turtle-neck sweater. It was a bright, sunshiny day with the temperature in the low sixties.
Officer Giangrosso drove to a point alongside Smith, and as they stopped Dusset called to him to come to the car. Routinely the officers stopped and questioned strangers in the project, frisking them for weapons because of the numerous armed robberies which had occurred there. Smith complied, and the officers got out of the car and asked Smith for his identification. Smith responded by removing a small bundle of loose papers from his rear pocket which he placed on the trunk of the car. While Dusset looked through these papers for identification, Giangrosso began to frisk Smith. He patted him down inside the leather coat first. Continuing, Giangrosso patted the outer leather coat and when he reached the outer left pocket, feeling an object there, he held it. At this time Smith became "agitated", thrust his hands into that pocket, turned and fled toward Gallier Street, trying to shed his leather coat and holding a plastic bag in his fist as he ran.
Both officers gave chase, and about 100 feet from the car Dusset attempted to tackle Smith but Smith went down to one knee as the pursuing officer rolled over his shoulders. Smith then spun around and started to run in the opposite direction, at which time he was tackled by Giangrosso. When Smith was tackled the plastic bag protruding from his clenched fist was thrown to the ground. He then resisted detention, "screaming and hollering that he's not going back to jail, and that we [the officers] would have to kill him. He resisted violently and we finally managed to physically subdue him . . ." Having subdued Smith, Giangrosso recovered the plastic bag containing a white powder which he believed to be heroin. It was later shown to be cocaine.
Smith was taken to Charity Hospital for examination of the minor lacerations and bruises incurred in the encounter with the police. There, in the course of his examination to determine if he was an addict, the sleeve of his sweater was rolled up to inspect his arm for track marks. One package fell out, which contained 6 packets of cocaine. Further search of Smith's clothing uncovered a large foil package containing two plastic bags. One bag had 6 packets of cocaine, the other contained 20 packets of the same substance.
The issue presented concerns the legality of the initial stop of Smith which led to the search and seizure of the cocaine.
It is a statutory right of "law enforcement officers" to stop any person in a "public place" whom they "reasonably suspect[s] is committing, has committed or is about to commit a felony or a misdemeanor", and they "may demand of him his name, address and an explanation of his actions." La.Code Crim.Pro. art. 215.1.[1]
*1131 In the case at bar these requirements were fulfilled. These "law enforcement officers" stopped Smith in a "public place" to "demand of him his name, address and explanation of his actions." This much is undisputed. The crucial question is whether the facts and circumstances gave these officers cause to "reasonably suspect" Smith was committing, had committed or was about to commit a crime.
Reasonable cause to suspect is, of course, a lesser requirement than reasonable or probable cause to believe, the latter being the standard applied to justify a search and seizure. Neither standard is, however, in the context of constitutional searches and seizures, so stringent that it must be supported by facts which would be sufficient to convict. State v. Weathers, 320 So.2d 892 (La.1975).
To establish grounds to suspect, therefore, the lesser of three burdens of proof is required. The common meaning of "suspect" as it relates to crimes is "to imagine (one) to be guilty or culpable on slight evidence or without proof" such as to "suspect one of theft" or "suspect one of giving false information." In its broad and general context the word means "to imagine to be or to be true, likely or probable: have a suspicion, intimation or inkling." Webster's Third New International Dictionary (unabridged). Adopting this common meaning of the word "suspect" will provide for the just determination of this prosecution. La.Code Crim.Pro. art. 2.
Did these officers have a reasonable suspicion that Smith was about to commit a crime? Only the initial stop is in question here, for the officers' right to frisk for a dangerous weapon is not seriously controverted in view of the record showing that they were aware of the fact that many pedestrians in this project were the victims of armed robberies. And, plainly, when Smith thrust his hand into his pocket and fled facts were presented justifying the pursuitthe higher standard of reasonable cause to believe had developed.
What then were the facts which gave reasonable cause to suspect which would justify the initial stop? These officers were routinely assigned to patrolling this project and the neighborhood. They knew that it was "a high crime area, a lot of narcotic traffic, numerous subjects with weapons, and armed robberies on pedestrians and businesses . . . ." Smith was a stranger to them, and, to say the least, his dress was unique and uncalled for in the prevailing weather conditions, a mild sunny day at 12:00 noon.
It is evident that these officers, accustomed as they were to this high crime area, had reason to suspect this stranger and his garb. It is a permissible inference that their experience and training supported this suspicion. Would they not know that such inappropriate dress could serve little purpose except to provide concealment of objects on the person of the wearer? Prevalence of narcotic traffic and armed robberies at this location would indicate a likelihood that either narcotic drugs or weapons were the objects concealed. And, of course, possession of either object permitted the inference that a crime had been or would be committed. The officers were, therefore, lawfully entitled to stop Smith and demand his identity. The circumstances "are to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training."United States v. Hall, 174 U.S.App.D.C. 78, 525 F.2d 857, at 859 (1976); United States v. Magda, 547 F.2d 756 (2d Cir. 1976); State v. Cook, 332 So.2d 760 (La.1976). A reasonable cause to suspect having been shown, Article 215.1 was complied with.
Although, under federal standards, a police officer may not arrest upon mere suspicion, Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), or for "investigation", Bennett v. United States, 70 U.S.App.D.C. 76, 104 F.2d 209 (1939), he has a duty to approach, Lee v. United States, 95 U.S.App.D.C. 156, 221 F.2d 29 (1954) confront and interrogate (which may include the power to temporarily detain). These procedures provide the most useful, most efficient and most effective method of investigation which often develops probable *1132 cause. Keiningham v. United States, 113 U.S.App.D.C. 295, 307 F.2d 632 (1962).
Street encounters are an everyday occurrence in today's cities, and the United States Supreme Court has acknowledged that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The Court in Terry upheld an intrusion by a police officer based on something less than probable cause, saying: "In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21, 88 S.Ct. at 1880. These tests are met in the instant case.
The considerable weight to be accorded to the fact-finding prerogative of the trial judge in these cases is noted. With this influence added to the recited facts, the ruling denying the motion to suppress gains additional support.
While giving lip service to the "suspect" standard in Article 215.1, the majority in fact applies a higher standard to this stop, saying police must have "reasonable cause" to stop.
I would affirm the ruling of the trial judge.
NOTES
[1] Testimony at the trial on the merits showed the day to be bright and sunshiny, with temperature in the low 60's.
[1] La.Code Crim.Pro. art. 215.1:

"A. A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and an explanation of his actions.
"B. When a law enforcement officer has stopped a person for questioning pursuant to this Article, and reasonably suspects that he is in danger of life or limb, he may search the outer clothing of such person for a dangerous weapon or for any other thing the possession of which may constitute a crime.
"C. If the law enforcement officer finds a dangerous weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person."