350 So.2d 1189 (1977)
STATE of Louisiana
v.
Donald R. SIMS and Tyler Lee Sims.
No. 59874.
Supreme Court of Louisiana.
October 10, 1977.
Jerry Kircus, Shreveport, for defendants-relators.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Sonia D. Peters, Asst. Dist. Atty., for plaintiff-respondent.
DIXON, Justice.
Defendants Donald R. and Tyler Lee Sims were convicted of possession of marijuana in violation of R.S. 40:966(C) and sentenced to pay a fine of $300 and costs, plus four months in jail. The prison sentence was suspended and defendants were placed on probation for eighteen months. Defendants applied for writs contending that the trial court erred in admitting into evidence marijuana recovered from defendants' car and in allowing a prosecution witness to read and testify from notes he had prepared earlier. Because we find merit in *1190 the first contention warranting reversal, we pretermit discussion of the second.
In the evening of November 22, 1975 Officers Mike Burns, Jack Miller and Tom Ostendorf of the Shreveport Police Department executed a search warrant at the residence of Danny G. Mingo. During the search the officers were told by Mingo's father that Danny was attending a narcotics party at a nearby motel. The officers proceeded to the motel and, upon arriving, noticed a black Cadillac occupied by three black males. Officer Miller had learned from a confidential informant earlier that day that a black male, Luther "Hawk" Christopher, had a quantity of heroin in his car, and that he was driving a black Cadillac. At trial, Miller, when asked whether he could identify the occupants of the car at that time, stated: "I when I first saw it it was dark and they were backing out of a parking spot on the back side of the motel, there was not very much light there and to me I thought that the driver was Luther Christopher. He resembles him very much." Officer Miller was the only officer present who knew Christopher by sight. The officers then sounded their siren in order to stop the defendants as they were driving toward the parking lot exit. The defendants did not stop immediately after the first siren blast, but rather continued seven-eight car lengths to the parking lot exit at the street before being blocked by street traffic. The officers, with guns drawn, approached the car, pulled the defendants out and demanded identification. After the defendants had been removed from the car, Officer Burns noticed two marijuana cigarettes on the front seat. Defendants were then placed under arrest for the possession of marijuana.[1]
The State argues that the marijuana was properly admitted at trial because it was seized after being observed in "plain view" during a valid investigatory stop.
It is now well settled that before a police officer may make a valid investigatory stop he must at least have reasonable cause to suspect the one stopped of past, present or imminent criminal conduct. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 889 (1968); State v. Smith, 347 So.2d 1127 (La.1977); State v. Cook, 332 So.2d 760 (La.1976); State v. Saia, 302 So.2d 869 (La. 1974). Evidence seized as a result of an investigatory stop made without such reasonable cause cannot be constitutionally admitted at trial. State v. Smith, supra; State v. Cook, supra; State v. Truss, 317 So.2d 177 (La.1975).
It is clear from the record that the officers had no reason to suspect these particular defendants of past, present or imminent criminal conduct. There was no known connection between the defendants and Mingo or Christopher. The officers, originally looking for Mingo, saw a Cadillac being driven by a man whom one of the officers thought resembled Christopher. The information connecting Christopher with heroin traffic was obtained through a confidential informant about whom the trial court had no information and whose information was neither detailed nor verified at trial. The only suspicious behavior exhibited by the defendants was their failure to stop immediately after the officers sounded their siren. Officer Ostendorf testified at trial, however, that the defendants' car windows were rolled up and that it was possible that the defendants did not hear the siren. The police car was unmarked and not equipped with flashing lights.
Assuming that the officers had sufficient cause to stop the defendants for investigatory purposes, that cause does not justify their actions after the officers realized that Christopher was not one of the occupants. Officer Miller, the only one of the three who could identify Christopher, testified that it was not necessary to remove the occupants to realize that Christopher was not among them.
*1191 In order for the "plain view" exception to support a warrantless search, there must be a prior justification for the intrusion into the protected area. State v. Fearn, 345 So.2d 468 (La.1977). In the present case, the marijuana cigarettes were on the front seat between the defendants and not in view until the defendants were pulled from the car. As discussed above, the officers were not justified in removing the defendants from the car, and the "plain view" exception is therefore inapplicable.
For the reasons stated, the evidence seized should not have been admitted at trial. The judgment of the trial court is therefore reversed and the case remanded for new trial.
SANDERS, C. J., and MARCUS, J., concur.
SUMMERS, J., dissents.
NOTES
[1] Larry Sims, brother of the defendants and the third occupant of the car was also charged with the offense, but was found not guilty after trial.