366 So.2d 1328 (1978)
STATE of Louisiana
v.
Adrian WILSON.
No. 62398.
Supreme Court of Louisiana.
December 15, 1978.
*1329 Phil Breaux, St. Gabriel, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Houston C. Gascon, III, Asst. Dist. Atty., Samuel C. Cashio, Dist. Atty., for plaintiff-appellee.
TATE, Justice.
After a jury-waived judge-trial, the defendant Wilson was convicted of possession of marijuana with intent to distribute, La. R.S. 40:966, and sentenced to imprisonment at hard labor for nine years.
We find that reversal is required by the defendant's Assignment of Error No. 1, which complains of the trial court's denial of his motion to suppress the marijuana as unconstitutionally seized. Accordingly, we need not discuss his other four assignments.

(1)
The marijuana was seized when two narcotics officers stopped an automobile in which the accused was riding as a passenger. The vehicle was stopped on the open highway on the basis of suspicion engendered by an informer's tip.
The state contends that the investigatory stop for questioning was justified on the basis of the officer's reasonable suspicion of criminal activity. The state relies upon La. C.Cr.P. art. 215.1.A: "A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or misdemeanor and may demand of him his name, address and an explanation of his actions."
It is well settled that evidence seized or otherwise obtained as a result of an unconstitutional "investigatory" stop cannot constitutionally be admitted into evidence against a criminally accused. State v. Smith, 347 So.2d 1127 (La.1977) and jurisprudence there cited.

(2)
The central issue, therefore, involves whether the officers had reasonable cause to make the investigatory stop. Under the facts of each case, this reasonable cause sufficient to suspect the detainee of past, *1330 present, or imminent criminal conduct depends upon whether the officers had sufficient knowledge of particular facts sufficient to permit them to infringe upon an individual's constitutional right to be left alone free of governmental interference with his liberty. State v. Smith, cited above, and jurisprudence set forth therein.
The virtually undisputed facts as to this issue (the testimony of the police officers) can be construed so as to show preponderantly only that the basis for the stop of the vehicle was solely a conjectural tip of unknown reliability.
Consequently, for reasons to be stated more fully below, we find that the warrantless stop of the vehicle, proceeding apparently lawfully on the public highway, and the search of its contents,[1] was an unconstitutional invasion of the accused's right to privacy against intrusion by governmental agents guaranteed to him by Article 1, Section 5, La. Constitution of 1974: "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. * * *"

(3)
We set forth below the factual context of this holding, which is based entirely upon the testimony of the two arresting police officers.
These deputies were part of the narcotics unit of the sheriff's department. On the evening in question, they had gone over to the east-bank area of the parish to see if they could discover any narcotics activity. They had done so, not on the basis of any reports (so far as the evidence shows), but only as a general surveillance of this part of their parish.
On the evening in question, they took along a confidential informant. The informant would go into a night club and report to the officers parked on the levee outside if he learned of anything. The informant's efforts to discover narcotics activity were apparently fruitless for the first three hours or so.
However, at about 11:30 p. m., the informant was sent into the Ballerina Lounge. Some fifteen minutes later, he reappeared and told the officers "[t]here is a load coming in. . . . It's headed down towards the Ballerina Lounge [and] Adrian Wilson should be in the car." He identified the vehicle as a 1968 blue, four-door Oldsmobile. The informant got his information "from talking to people inside the barroom."
The officers immediately set off in search of the vehicle. A short time later, they spotted a blue Oldsmobile"The only car we seen the whole time from the time we left till we seen the vehicle,"heading towards the Ballerina Lounge on the main highway into the parish.
The stop was for one reason alone: As one deputy testified, the officers wanted "to see if this subject was holding marijuana.. . . He wasn't stopped for a traffic violation. He was stopped for a warrantwe had information that he was holding."
While the informant had told them Wilson was a narcotics dealer during the patrol, neither officer had ever seen the defendant before that morning.
With regard to the reliability or experience of the informant, the only testimony is that of one deputy that the informant had helped him "[o]nce or twice [in the past]. It wasn't narcotics oriented, it was informationburglars, so forth."

(4)
The defense in brief argues that the informant's tip supplied neither probable cause for an arrest, nor reasonable grounds for an investigatory detention. Art. 215.1 C.Cr.P. In this view, the seizure of evidence *1331 which came into view only after the stop was irredeemably tainted by the prior illegality.
The state answers that the tip provided, at least, reasonable suspicion under Art. 215.1 and that the evidence thereby came into the plain view of the officers.

(5)
The state seems to concede, as it must, that the officers did not have probable cause to arrest the defendant when they stopped the car.
For the probable cause showing, the double-hearsay nature of the tip does not necessarily present a problem. State v. Paciera, 290 So.2d 681 (La.1974).[2] Where the officers arrest or search an individual based upon hearsay information, the hearsay must contain underlying circumstances and details sufficient to provide a substantial factual basis to conclude both (1) that the informant is credible and (2) that the information so furnished is of a reliable nature, i. e., was obtained under circumstances or from sources factually indicating its veracity. State v. Richards, 357 So.2d 1128 (La.1978).
Even assuming the reliability of the informantand pretermitting the paucity of the state's showing in this regard, the credibility of his tip turns not on his own personal knowledge and observation, State v. Paciera, 290 So.2d 681 (La.1974), but on the basis of the information obtained from those unseen and undisclosed persons in the Ballerina Lounge. The record contains no basis on which "to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information." Paciera, 290 So.2d at 686. For all that appears, the information was no "more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

(6)
The state forcefully contends that the informer's tip, otherwise patently inadequate to furnish probable cause for an arrest or search, nevertheless provides reasonable cause for suspicion sufficient to make the investigatory stop.
Reasonable cause for an investigatory stop or detention is something less than probable cause. Nevertheless, it requires the detaining officer to have articulable knowledge of particular facts sufficient reasonably to suspect the detained person of criminal activity and thus to justify, by this temporary detention for inquiry, an infringement upon his constitutionally protected right of freedom from governmental interference.
See: State v. Dixon, 337 So.2d 1165 (La. 1976); State v. Weathers, 320 So.2d 892 (La.1975). See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[3]
*1332 An informant's tip can provide a police officer with reasonable cause to detain and question a suspect. State v. Sims, 350 So.2d 1189 (La.1977); State v. Robinson, 342 So.2d 183 (La.1977); State v. Perique, 340 So.2d 1369 (La.1977); State v. Dixon, 337 So.2d 1165 (La.1976). Whatever the technical or practical distinctions between an arrest and a stop, the rule that emerges from these decisions is that, for either purpose, the information given by a reliable informant must carry with it sufficient indicia of its reliability to furnish reasonable cause to make an investigatory stop, the same criteria of trustworthiness required for the showing of the greater degree of probability of criminal conduct necessary to justify an arrest.[4]
Here, as in State v. Sims, 350 So.2d 1189 (La.1977) (where we held the stop to be unjustified), the record reveals no information about the ultimate source of the tip connecting defendant with marijuana traffickingthe anonymous informant inside the Ballerina Lounge. That information, as in Sims, was neither detailed nor verified. Although the officers may have heard of the defendant Wilson, they had never seen him before. They had no physical description of their suspect, nor of his supposed companions.
The only corroboration of the tip came from the type of car and (possibly) from the number of occupants observed by the officers.
This vehicle was traveling south on the main highway into town, shortly after midnight on a Saturday night. The police officers with commendable frankness testified that the vehicle was being driven in a lawful manner and took no evasive action to avoid them after they signaled it to stop.
The officers thus had no reasonable basis independent of the anonymous informant's tip[5] to connect this vehicle and these occupants with the alleged criminal activity: nothing (prior to the stop[6]) to suggest that the tip in fact was anything more than casual rumor or accusation.
*1333 An unverified and undifferentiated tip derived from an undisclosed source cannot supply the reasonable cause to justify an intrusion upon a person's liberty, whether that intrusion is characterized as an arrest or as an investigatory stop. As stated in State v. Tassin, 343 So.2d 681, 691 (La.1977): "* * * factual cause, not underworld gossip, is required by our state constitution before governmental agents may invade the privacy of an individual living under protection of that constitution."
The anonymous tip of unknown basis no more justified under our constitution the stop of the vehicle in which the defendant was riding, than it did that of the parish priest or local doctor or of any other unsuspicious traveller on the highway at the time.
We conclude, therefore, that the trial court erred in denying the motion to suppress the evidence unconstitutionally seized as a result of the illegal stop herein.

Decree
Accordingly, we reverse the conviction and sentence, and we remand for a new trial in accordance with law.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
DENNIS, J., concurs.
NOTES
[1] In view of our holding of the unconstitutional stop, we do not reach the substantial additional contention that, even if the stop were justified, the marijuana in the vehicle, seized as a result of such an allegedly investigatory stop, was the product of an unlawful warrantless search of the vehicle without probable cause, despite the state's contention that the objects seized were in plain view.
[2] The Seventh Circuit noted in U. S. v. Wilson, 479 F.2d 936, 941 (7th Cir. 1973), "[i]f hearsay information is acceptable in arriving at probable cause, and it is, Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), then hearsay based on hearsay should be acceptable as long as the police officer has sufficient information so that both levels of hearsay meet the two-pronged test spelled out in Aguilar [v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)]." As noted above, that test requires a showing of the reliability of both (1) the hearsay informant and (2) the information.
[3] The lead case in this area remains the United States Supreme Court's decision in Terry v. Ohio, supra. Since the court in Terry explicitly held that a "stop and frisk" is no less a search and seizure for purposes of the Fourth Amendment than an arrest and search incident thereto, the constitutional differences between the two, and the distinction between reasonable grounds and probable cause remain elusive and troublesome.

Some members of this court have therefore suggested at least on occasion that no difference exists. Thus, in State v. Kinneman, 337 So.2d 441, 444 (La.1976), the opinion by Dixon, J., notes that to the extent Art. 1, § 5, La.Const. of 1974 expressly proscribes invasions of privacy, "it should make no difference in Louisiana whether the actions of the police constituted an `arrest,' with the discovery of contraband an incident thereto, or whether the police action was something less than an arrest, during which the contraband was seen `in plain view.' In either case the police action must have been reasonable, that is, supported by probable cause." See also, State v. Shivers, 346 So.2d 657 (La.1977), opinion by Dixon, J., joined by Calogero, J., and Dennis J., concurring with plurality opinion in that case.
[4] The federal constitutional provision against unreasonable searches and seizures seems to have been interpreted similarly to our interpretation of Louisiana's constitutional provision. See Terry v. Ohio, cited in text, and its progeny.

In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the United States Supreme Court upheld an officer's investigatory approach to a suspect, based upon a tip by a known and reliable informant that the suspect was armed and was carrying narcotics. Although the high court opinion does not elucidate the basis of his reliability, the intermediate court opinion states that the informant who was not only known to the officer as reliable but was "an eye-witness, invested with `built-in credibility'" as to the facts stated. Williams v. Adams, 436 F.2d 30, 33 (CA 2, 1970) (see also, 441 F.2d 394 (CA 2, 1971)). The incident occurred in a high-crime area at 2:15 in the morning.
As the Supreme Court stated in Adams, 407 U.S. 147, 92 S.Ct. 1924: "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require investigation before a forcible stop of a suspect would be authorized."
[5] Anonymous tips sometimes can, and do, lead to lawful investigatory stops. In State v. Mims, 330 So.2d 905 (La.1976), for example, police received a bulletin of a report (from an undisclosed source) that occupants of a particularly-described vehicle had purchased cigarette papers at a local store, and that one of the occupants had a strong odor of marijuana about him. The officers spotted the vehicle and followed it to a grocery store. As one of the officers walked toward the store, he walked past the vehicle and observed numerous marijuana seeds on the seats and floorboard of the vehicle. The officers then stopped the defendant. The officer's observation of the seeds prior to the actual seizure of defendant thereby transformed an otherwise patently inadequate tip into a reasonable basis justifying an infringement on the individual's right to be free from governmental interference.
[6] In the present case, the alleged observations by a deputy of marijuana in the glove compartment and within a bag on the back seat came only after the vehicle had been seized by the officers. This court has of course repeatedly and unequivocally cautioned that for evidence seized within the plain view of the officers, there must be a prior justified intrusion on the protected privacy rights of the accused. State v. Fearn, 345 So.2d 468 (La.1977); Art. 1, § 5, La.Const. of 1974.