366 So.2d 550 (1979)
STATE of Louisiana
v.
Newton BROWN.
No. 62616.
Supreme Court of Louisiana.
January 8, 1979.
*551 Robert F. Barnard, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
*552 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Philip J. Boudousque, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
The question presented by this case is whether a person who lawfully obtains a dose of methadone from the Louisiana Narcotics Rehabilitation Commission while participating in an experimental pilot clinic program is guilty of illegal possession of methadone if he carries the methadone off the clinic premises without permission.
Defendant Newton Brown was charged by bill of information with possession of methadone, La.R.S. 40:967, and convicted by a six-person jury of attempted possession of a controlled dangerous substance. The defendant was adjudged a multiple offender, La.R.S. 15:529.1, and sentenced to serve nine years at hard labor.
Defendant relies on three assignments of error in appealing his conviction and sentence. Because we find reversible error in the first assignment of error, the remaining assignments are pretermitted.
At approximately 9:45 a. m. on May 5, 1975, while on patrol near the intersection of Baronne and Melpomene Streets in New Orleans, Officers Van Dalen and Cavilar saw Newton Brown, the defendant. Officer Van Dalen, a part-time employee at a nearby methadone rehabilitation clinic, had been informed that Brown, a patient of the clinic, on occasion had smuggled some of his methadone from the premises. The methadone clinic is one of several facilities established by the Louisiana Narcotics Rehabilitation Commission to aid in the prevention and correction of narcotic addition. Among its other functions, the commission is authorized to carry on programs for the administration, under medical supervision, of methadone to addicts as a substitute for narcotic or addictive drugs.
When the officers observed him on the morning of May 5, 1975, Brown was holding a Coca-Cola bottle. Officer Van Dalen questioned Brown about his activities and the defendant replied that he had just come from the rehabilitation clinic. The officer took the bottle and, holding it up to the light, noticed a reddish tint in the liquid with which it was partly filled. Since Van Dalen knew that the rehabilitation clinic administered methadone in a bright pink syrup, he suspected that the reddish tint was caused by methadone. The officers searched the defendant, informed him of his constitutional rights, and placed him in the police car. The defendant was formally arrested an hour and a half later when the laboratory results confirmed that the bottle contained methadone.
In his first assignment of error the defendant urges that the evidence seized should have been suppressed because it was obtained as a result of an unlawful arrest. Possession of a Schedule II controlled dangerous substance, the crime of which the defendant was suspected, and for which he was arrested, is defined by La.R.S. 40:967(C), as follows:
"It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner or provided in R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by this part. Any person who violates this subsection shall be imprisoned with or without hard labor for not more than five years; and, in addition, may be sentenced to pay a fine of not more than five thousand dollars."
The statute referred to in the crime definition, La.R.S. 40:978, in pertinent part, provides:
"A. Except when dispensed or administered directly by a medical practitioner or administered by a person authorized to administer by such practitioner, other than a pharmacist, to an ultimate user, no controlled dangerous substance included in Schedule II, which is a prescription *553 drug[1] as determined under the Louisiana Revised Statutes, may be dispensed or administered without the written prescription of a practitioner, except that in emergency situations, as prescribed by the State Board of Health by regulation, such drug may be dispensed or administered upon oral prescription reduced promptly to writing and filed by the pharmacist. Prescriptions shall be retained in conformity with the requirements of R.S. 40:976. No prescription for a Schedule II substance may be refilled."
Accordingly, under the exceptions provided by the statutes, it is permissible for a person to possess a Schedule II controlled dangerous substance if he obtains it directly, or pursuant to a valid prescription order from a practitioner (La.R.S. 40:967(C)) or if it is dispensed or administered directly to him by a medical practitioner or administered by a person authorized to administer by such practitioner, other than a pharmacist, to an ultimate user. (La.R.S. 40:978(A)).
It is not disputed that the methadone found in Brown's possession was given to him for his ultimate use and consumption by the Louisiana Narcotics Rehabilitation Commission at one of its clinics established for that purpose. Since the prosecution did not present evidence to the contrary, it is presumed that the commission acted lawfully in administering the methadone to the defendant. Therefore, from the record before us we must conclude that the commission, in fact, administered the drug according to La.R.S. 40:1052, which, in pertinent part, provides:
"[The Louisiana Narcotics Rehabilitation Commission] is authorized to establish, direct and carry on experimental pilot clinic programs for the treatment and rehabilitation of narcotic addicts, which programs may include the administration, under medical supervision and control, of methadone or other drugs as a substitute for narcotic or addictive drugs. * * *" (emphasis added)
Since the commission's administration of methadone, under medical supervision and control, for the treatment and rehabilitation of a narcotic addict necessarily involves the administration of such drugs by a physician or under the direction of a physician, the receipt and possession of methadone under these circumstances falls within the express exception of La.R.S. 40:967 and is therefore lawful.
Accordingly, possession of methadone, when obtained by a person under medical supervision and control, as part of a program for the treatment and rehabilitation for narcotic addicts administered by the Louisiana Narcotics Rehabilitation Commission is not a crime. Although the prosecution introduced evidence that the commission has adopted regulations limiting the circumstances under which an addict may carry methadone off clinic premises, there is no statute or constitutional provision by which this conduct is defined as criminal.[2]
There is no evidence that the arresting officers had any reason to believe that the initial administration of the methadone to Brown was unlawful. Consequently, the officers had no probable cause to suspect or believe that Brown was engaged in criminal activity at any time during their encounter with him. Thus, the investigatory stop, the seizure of the soft drink bottle and the arrest of Brown were all constitutionally invalid. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Matthews, 366 So.2d 1348 (La.1978); *554 State v. Washington, 364 So.2d 958 (La. 1978); State v. Davis, 359 So.2d 986 (La. 1978); State v. Sims, 350 So.2d 1189 (La. 1977); State v. Smith, 347 So.2d 1127 (La. 1977); State v. Kinneman, 337 So.2d 441 (La.1976); State v. Saia, 302 So.2d 869 (La. 1974). If the officers had acted upon specific and articulable facts within their knowledge indicating that defendant had obtained the methadone without medical supervision, or that he possessed the drug with the intent to distribute it,[3] the policemen would have had reasonable cause to suspect Brown of criminal activity and the right to stop him for questioning. See, Terry v. Ohio, supra; State v. Matthews, supra; State v. Washington, supra; State v. Davis, supra; State v. Sims, supra; State v. Smith, supra; State v. Kinneman, supra; State v. Saia, supra. However, the state has the burden of proving that the warrantless search and seizure was justified under one of the narrow exceptions to the warrant requirements, State v. Franklin, 353 So.2d 1315 (La.1978), and the prosecution failed to educe any evidence that the officers had information that Brown obtained the drugs illegally or intended to use them for an unlawful purpose.
Consequently, the defendant's motion to suppress should have been granted, and his conviction and sentence which were based on the illegally obtained evidence must be reversed. Furthermore, it is clear as a matter of law that the jury could not properly have returned a verdict of guilty because the entire proof assembled by the state does not constitute any evidence of the charged offense.[4] Under circumstances in which a defendant's conviction has been overturned due to a total lack of evidence as to an essential element of the crime, as distinguished from reversal for a trial error, the Double Jeopardy Clause precludes a second trial and requires the direction of a judgment of acquittal. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); cf. State v. Allien, 366 So.2d 1308 (La.1978).
For the reasons assigned, the defendant's conviction and sentence are reversed and a judgment of acquittal is entered in his favor.
REVERSED; JUDGMENT OF ACQUITTAL RENDERED.
SUMMERS, C. J., dissents for the reasons assigned.
MARCUS, J., dissents for reasons assigned by SUMMERS, C. J.
SUMMERS, Justice (dissenting).
Section 978 of Title 40 of the Revised Statutes prescribes the general rule that controlled dangerous substances may not be dispensed or administered without prescription.
It is significant, therefore, that Section 1052 of Title 40 regulating the use of methadone only authorizes the Louisiana Narcotic Rehabilitation Commission to administer that substance under medical supervision and control. The omission is meaningful. As used in the context of the statutes under consideration and when applied to a program for rehabilitation of drug addicts, administering methadone under medical supervision and control does not imply the dispensation of that drug for use or possession off the premises; nor does the statute imply that methadone is a "prescription" drug, which would permit possession of it beyond the limits of medical supervision and control. To administer as used there is, according to Webster's Third New International Dictionary, "to give remedially (as medicine) (the amount of the antitoxin administered *555 is determined by the doctor.)" On the other hand, to dispense is "to prepare and distribute (medicines) to the sick." Administer and dispense have different meanings. Section 1052 refers to administering, not dispensing the drug.
As I read the statute methadone must be administered under medical supervision and control. It may not be merely dispensed to addicts.
Thus the police had ample cause to arrest the defendant for they correctly understood the law to mean that methadone must be consumed on the premises of the clinic where medical supervision and control existednot on the streets; they had been told by a reliable informant that defendant was taking methadone out of the clinic, contrary to law; and they confirmed the fact that defendant was in possession of methadone when they viewed the Coke bottle and noticed a reddish tint to the liquid content. Officer Van Dalen knew the rehabilitation clinic administered methadone in a bright pink syrup.
I would affirm the conviction.
NOTES
[1] Methadone is a "prescription drug". Schedule II substances are designated as having a "currently accepted medical use in treatment." La.R.S. 40:963(B)(2). "Prescription" is defined as "a written request for a drug or therapeutic aid issued by a licensed physician, dentist, veterinarian, osteopath, or podiatrist for a legitimate medical purpose." La.R.S. 40:961(30). Therefore, by authorizing the dispensation of methadone under medical supervision and control as part of rehabilitation and treatment programs, the legislature tacitly, if not expressly, designated methadone as a "prescription drug."
[2] La.R.S. 14:7 provides that "[a] crime is that conduct which is defined as criminal in this code, or in other acts of the legislature, or in the constitution of this state."
[3] Even legal possession of a Schedule II controlled dangerous substance, if "with intent to produce, manufacture, distribute or dispense," is prohibited. La.R.S. 40:967(A)(1).
[4] Although methadone legally obtained at a commission clinic may constitute evidence of possession of methadone with intent to distribute if the quantity is sufficient, the defendant herein could not be retried for the more serious offense which is based upon the same evidence as the present prosecution. State v. Smith, 323 So.2d 797 (La.1975); City of Baton Rouge v. Jackson, 310 So.2d 596 (La.1975); State v. Didier, 262 La. 364, 263 So.2d 322 (1972); State v. Bonfanti, 262 La. 153, 262 So.2d 504 (1972).