MARVIN, Judge.
The State attempted to appeal the sustaining of motions to suppress marijuana obtained after an investigatory stop and a warrantless search and seizure from the automobile occupied by the three defendants that was consented to by the defendant driver of the automobile.
An appeal does not lie in such a situation. The record having been lodged and briefs filed as in an appeal, we consider the appeal as an application for a writ of review by the State. See State v. Reid, 355 So.2d 932 (La.1978); State v. Bradley, 445 So.2d 209 (La.App. 4th Cir.1984); CCrP Art. 912. We grant the application and reverse the trial court and overrule the motions to suppress.
*246 FACTS
Defendants did not testify or call witnesses at the hearing on the motion to suppress. The State produced two officers of the West Monroe Police Department and the person whose name was used in a telephone call to the police department.
The communications officer said that at 8:50 p.m. on January 15,1984, he received a telephone call from a person, otherwise unknown to him, who identified himself as Joe Cotton, a resident of Apartment No. 57 of the Pine Terrace Apartments in West Monroe. The telephoner reported that when walking to his apartment within the last few minutes he had seen, and had smelled smoke from, “three boys” who were “smoking dope” in a maroon Pinto parked at a washateria at the Pines Terrace Apartments. These apartments and the washateria, according to the officers, were near the intersection of Pine Terrace Street and North 7th Avenue.
A patrolman was informed of these reported details and was dispatched by radio to the scene. The communications officer said that in seven minutes the patrolman radioed back that he had the three suspects and was bringing them to the police station. The patrolman said that he drove to Pine Terrace and North 7th within one minute after receiving the dispatch and saw a maroon Pinto driving away from the stop sign at the intersection. The stop sign was about 200-250 feet away from the washateria on Pine Terrace. The patrolman stopped the Pinto by using the flashing light on his patrol car.
The patrolman told the driver of the car, who had exited the Pinto after the stop, about what had been reported to him and why he was investigating. He asked the driver for his driver’s license. The driver denied smoking pot and said he did not have a driver’s license. The patrolman asked whether the driver “would mind” him searching the car. The driver said, “sure, go ahead.” The marijuana was found underneath the passenger side of the front seat occupied by another defendant. The three defendants (including one who was on the back seat) were given Miranda warnings and were transported to the station.
In obedience to Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and much to its credit, the State subpoenaed Joe Cotton after learning that he had denied, to a police investigator a day or two after the defendants’ arrest, making the telephone call or knowing anything about the recited circumstances. Cotton testified that he lived in Apt. No. 60 of Pine Terrace Apartments, that Apt. No. 57 was next door but he did not know who resided there at the time, that he did not make the phone call, did not know defendants or anybody involved, and did not know who had used his name.
THE ISSUE
The precise issue is whether the recited circumstances afforded the patrolman the requisite reasonable suspicion to justify the investigatory stop of the automobile and the interrogation of its occupants. La. CCrP Art. 215.1; Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983). Both the federal and state constitutions protect a citizen against unreasonable invasions of privacy, detentions, and searches and seizures. U.S. Const. Amend. IV; LSA-Const. Art. 1, § 5. La. CCrP Art. 215.1 recognizes the case law authority that a law enforcement officer, under appropriate conditions, may temporarily stop and interrogate a citizen about possible criminal activity. Each case must be determined by its own circumstances. State v. Chaney, 423 So.2d 1092 (La.1982).
The primary inquiry is directed to the totality of the circumstances, knowledge and experience of the officer making the stop. The “good faith” of the officer is a secondary consideration. State v. Flowers, 441 So.2d 707 (La.1983). Compare Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
Reasonable suspicion to justify an investigatory stop and interrogation is *247 something less than probable or reasonable cause to arrest without a warrant. La. CCrP Art. 213. Nevertheless, the detaining officer must have articulable knowledge of particular facts that meet the test of reasonableness to suspect the detained person of criminal activity and to justify the detention against an infringement of the constitutionally protected right of freedom from governmental interference. State v. Wilson, 366 So.2d 1328, 1331 (La.1978).
An informant’s tip may provide the reasonable suspicion, but that tip must have some indicia of reliability that would cause a reasonable mind to suspect the detainee of criminal activity. Wilson, supra at p. 1332.
The patrolman was acting in response to information that can be characterized as coming from a citizen informant, but which was later revealed to have come from an anonymous informant. See and compare State v. Morris, 444 So.2d 1200 (La.1984); State v. Wilson, supra; and State v. Rodriguez, 396 So.2d 1312 (La.1981). Tips from citizen informers have been recognized as entitled to a higher degree of reliability or credibility than tips from anonymous informers, which require some independent police corroboration, and from confidential informers, which require proven reliability. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
The trial court relied primarily on State v. Wilson, supra. As we have shown, Wilson correctly analyzes and states the law. In our opinion, however, Wilson is factually inapposite. There, the confidential informant obtained his information from other informants inside the barroom who did not have firsthand knowledge and observation as here. There it was said that “the information was no ‘more substantial than a casual rumor ... or an accusation based merely on an individual’s general reputation.’ ” Wilson, at p. 1331.
In Wilson, there was “no information about the ultimate ... source of the tip ...—the anonymous informant inside the lounge [who told the confidential informant who told the police]—... connecting the defendant with marijuana trafficking ...” There was “nothing ... to suggest that the tip in fact was anything more than casual rumor or accusation.” Supra, at p. 1332.
Even though this patrolman could not negate the existence of another maroon Pinto parked at the washateria, we cannot and do not find unreasonable the patrolman’s suspicion that the defendant’s Pinto driving away from the stop sign at an intersection within 250 feet of the washate-ria was the Pinto he was seeking. The patrolman had been told only a minute before of the details of the tip (that a named resident of the apartment complex had walked by the automobile at the was-hateria and had seen and smelled three occupants “smoking dope” in the car). This knowledge afforded the patrolman ar-ticulable reasonable suspicion to stop the vehicle and interrogate its occupants.
The patrolman’s knowledge at the time of the stop came from the firsthand observations of a source identified to him as a citizen informer. See State v. Abadie, 390 So.2d 517 (La.1980). Neither the time (one minute after the report) nor the distance factor (200-250 feet from the washateria) is here attenuated. The patrolman would have neglected his duty to ascertain whether the defendants were violating LRS 40:966 or whether the defendant driver posed a danger to the motoring public by violating LRS 14:98.1, had he not stopped the vehicle.
The driver and ostensible custodian or owner of the automobile consented to the search after the stop and we do not consider whether the search could have been conducted without a warrant.
Accordingly, we grant the writ, reverse the trial court, and hereby overrule the motions to suppress and remand these cases to the trial court for further proceedings.
*248 WRIT GRANTED, REVERSED, RENDERED, REMANDED.