471 So.2d 949 (1985)
STATE of Louisiana, Appellee,
v.
Paul BURNS, Appellant.
No. 17108-KA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*950 Ronald J. Miciotto, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., James M. Bullers, Asst. Dist. Atty., Minden, for appellee.
Before JASPER E. JONES, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
After a trial by jury, defendant Paul Burns was found guilty as charged of simple burglary. For his crime, he was sentenced to serve six years at hard labor. From this conviction and sentence he now appeals assigning six errors, three of which have been abandoned. Finding no merit to his contentions, we affirm.
On January 17, 1984 at approximately 3:00 a.m., Sgt. Jack Shelley of the Minden Police Department received a phone call from a woman. The woman told the Sergeant that she had argued with her boyfriend and that he left her house with the keys to her place of employment. The woman's set of keys included keys which would open the store's safe. The woman told the Sergeant that she worked at the Charter Food Store in Minden and asked the Sergeant, "Please keep an eye on the store...."
Sgt. Shelley made a note of the phone call, but otherwise did nothing else. At approximately 3:20 a.m., he received another phone call from the same woman who had called earlier. During this phone conversation, the woman sounded frantic and excited. The woman again requested that the Minden Police Department keep an eye on the Charter Food Store because she had reason to believe that it might be broken into during the night. The woman did not identify herself during either phone conversation. However, the woman indicated to Sgt. Shelley that her boyfriend would be driving a "shiny new Ford pickup."
Soon after the second conversation, Sgt. Shelley advised officers on patrol to be on the lookout for a late model Ford pickup and to watch the Charter Food Store. As soon as this information was broadcast to the patrol units, an employee of a local security service reported that he had observed a new-looking Ford pickup leaving the Charter Food Store parking lot. The security guard reported that the suspect driving the pickup truck was a white male with a beard. The security guard also reported part of the license plate number on the pickup truck and indicated that he had last seen the pickup truck turning down a certain road.
Officer Steve Biddick of the Minden Police Department was on patrol during the early morning hours of January 17, 1984. Officer Biddick received the dispatch from Sgt. Shelley advising him about the anonymous tip. Later, Officer Biddick heard the report of the local security guard that a pickup truck had just departed from the Charter Food Store. Shortly thereafter, Officer Biddick spotted a late model Ford pickup driven by a white male which matched the description given by the local security guard. Officer Biddick turned on his emergency lights to stop the vehicle. The driver of the truck stopped his vehicle, and Officer Biddick turned his spotlight on the cab of the truck so that he could observe the actions of the suspect. The suspect appeared to be either reaching for or putting something under the front seat. *951 Seconds later, Officer Robert Booth of the Minden Police Department arrived at the scene.
The defendant exited his vehicle and met Officer Biddick halfway between the officer's patrol car and the pickup truck. Officer Biddick asked the defendant where he had been, and the defendant responded that he had come from the Charter Food Store. As soon as Officer Booth heard this statement, he walked to the front of the defendant's pickup truck. At the time the door to the pickup truck was open. Officer Booth shined his flashlight into the interior of the truck. Officer Booth observed a packet of money sticking out from under the center of the seat. Officer Booth then entered the truck and seized a total of four packets of money from underneath the seat. Altogether, the four packets of currency contained $706. After Officer Booth showed Officer Biddick the money, defendant was placed under arrest.
After the defendant was placed under arrest, he was advised of his Miranda rights. The defendant then explained that he had gone to the Charter Food Store in order to get some medicine for a headache. Defendant further stated that he checked in the safe to see if the money was still there because he was afraid that something was going to happen to it. Defendant also said that his girlfriend's name was Teresa Clevinger, who was the assistant manager of the food store at the time. Burns stated that he was taking the money home to his girlfriend so that she could return it back to the store.

Assignments of Error Nos. 1 & 4
By these assignments, defendant complains that the trial court erred in overruling his motion to suppress. In this motion, defendant argued that the initial stop of this vehicle was unlawful and additionally, that the search and seizure which followed was illegal.
Code of Criminal Procedure Article 215.1(A) provides:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
....
The Supreme Court in State v. Flowers, 441 So.2d 707 (La.1983), discussed the relation of anonymous tips to investigatory stops. The Court explained that:
Stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the Fourth Amendment even though the purpose of the stop is limited and the resulting detention is quite brief. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).
The Court resolved that there were three necessary inquiries in determining whether a valid stop had occurred in the following terms:
Thus, there are at least three inquiries involved in determining whether a seizure was a valid investigatory stop: (a) whether the intrusion was an arrest or a stop; (b) whether the stop was of a type which is reasonable in view of the public interest served and the degree of invasion entailed; and (c) whether the particular stop was warranted by a reasonable suspicion based on specific, articulable facts and rational inferences from those facts.
Appellant concedes that factors (a) and (b) are satisfied here, but strenuously contends that criterion (c) was not satisfied. He argues that the stop was not supported by a reasonable suspicion based on specific articulable facts and rational inferences drawn from those facts.
An officer's knowledge of facts need not be based on his personal observations. On the contrary, an officer can, and in many situations must, act upon information supplied by another person, be it a fellow officer or an informant. An informant's tip can provide a police officer with reasonable cause to detain and question a subject. Adams v. Williams, 407 U.S. 143, *952 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Flowers, supra; State v. Wilson, 366 So.2d 1328 (La.1978); State v. Sims, 350 So.2d 1189 (La.1977).
In this instance, the officers received information that the defendant had purloined the keys to the Charter Food Store and was driving a shiny new Ford pickup truck. Although the information came from an anonymous tip, the caller had personal knowledge that the keys to the safe were in the possession of the driver of a shiny new Ford pickup, described as the caller's boyfriend. This information was independently corroborated through the security guard who verified that a white male with a beard was seen driving a late model Ford pickup truck out of the parking lot of the Charter Food Store.
It is important to remember that the police received not just one but two calls in close sequence. Most importantly, the information was sufficiently detailed to include such information about the caller that the person could probably have been identified. Also, a motive for the actions of the person suspected was given. The information was almost immediately corroborated from a source other than the police, the private security service guard, who even obtained part of the license number of the vehicle. The totality of the circumstances considered, we believe it was not only reasonable for the officer to stop the vehicle in question to inquire, but that it was his duty to do so. See Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).[*]
Having determined then that the stop was supported by a reasonable suspicion based on specific articulable facts and rational inferences drawn from these facts, we now turn to a consideration of the legality of the subsequent seizure of the money.
The constitutional standards for the plain view doctrine were formerly enunciated in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). For the plain view doctrine to apply, Coolidge required (a) a lawful initial intrusion, (b) that incriminating evidence must be discovered inadvertently, and (c) that it be "immediately apparent" that the item observed is evidence or contraband.
In State v. Camp, 459 So.2d 53 (La.App. 2d Cir.1984), this court discussed the recent United States Supreme Court modification of the "immediately apparent" requirement of the plain view doctrine as follows:
[T]he "immediately apparent" requirement was substantially modified recently by the United States Supreme Court in Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) when that court stated:
Decisions by this court since Coolidge indicate that the use of the phrase "immediately apparent" was verly likely an unhappy choice of words since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for application of the "plain view" doctrine. Brown, supra, 103 S.Ct. 1542.
It is unclear what phrase or label might be used to replace that of "immediately apparent." However, the Brown court stated that "the rule from Payton, supra [Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.d 639 (1980)], requiring probable cause for seizure in the ordinary case, is consistent with the fourth amendment and we reafirm it here." Brown, supra, 103 S.Ct. at p. 1542. We may perhaps then change the label of the third requirement to that of "probable cause" to believe that the item is evidence or contraband. (Footnote omitted.)
Earlier in this assignment, we determined that the officers validly stopped the *953 defendant's automobile. Consequently, the first requirement of the plain view doctrine, that there be a lawful intrusion, was met.
With respect to the second requirement, defendant asserts that since the police officers were required to use a flashlight to see into the interior of the truck, the discovery was not inadvertent and therefore the plain view doctrine is inapplicable. However, in State v. Ford, 407 So.2d 688 (La.1981), the Louisiana Supreme Court noted that the use of a flashlight in order to see into the interior of an automobile does not defeat the plain view doctrine.
The facts of this case present no problem with respect to the first and second criteria. It was quite reasonable for the officers to stop this defendant and it was surely a normal police function for one of the officers to shine his flashlight on the inside of defendant's car to see what might be readily apparent there, while the other officer observed defendant at close range and questioned him in connection with suspected driving under the influence of alcohol or drugs. The butt of the gun was thus discovered inadvertently during this justified intrusion into the "protected area" of defendant's automobile.
Likewise, in this instance the automobile was validly stopped, and defendant was being questioned. Clearly, the officer had the right to shine the flashlight in the automobile, especially in light of the information that defendant may have been placing something under the seat.
The third requirement of the plain view doctrine is also met as the officers clearly had probable cause to associate the stacks of currency found under the seat of defendant's truck with criminal activity. Consequently, all three requirements of the plain view doctrine were satisfied in this instance, and the subsequent seizure of the money from defendant's vehicle was valid. This assignment lacks merit.

Assignment of Error No. 6
In this assignment of error, defendant argues that the state adduced insufficient evidence to support his conviction. He specifically maintains that there was no proof that he entered the Charter Food Store with the specific intent to commit a felony or theft therein.
In a simple burglary prosecution, the state must prove as an essential element of the crime that the defendant had the specific intent to commit either a felony or a theft at the time of his unauthorized entry. State v. Marcello, 385 So.2d 244 (La.1980). Specific intent, being subjective in character, need not be proven as a fact and may be inferred from the circumstances of the transaction. State v. Jacobs, 435 So.2d 1014 (La.App. 1st Cir.1983).
In this instance, viewing the evidence in the light most favorable to the prosecution, a rational juror could conclude beyond a reasonable doubt that the state proved that the defendant had the specific intent to commit a theft at the time of his unauthorized entry into the convenience store. The record shows that the defendant made an unauthorized entry into the store during a time when the store was not opened. Defendant's girlfriend indicated during her testimony that the defendant surreptitiously acquired the keys from the store from her purse while she was asleep. The defendant stated that he went to the store to get pain medication; however, the record reveals that a considerable amount of pain medication was found at his house and that he had been treated for back pain at an emergency room hospital just prior to his leaving for the store. A rational juror weighing the credibility of these witnesses could have rejected defendant's version of events and concluded that he had the requisite specific intent to commit a theft when he entered the store.
We conclude that defendant's assignments of error are without merit. Accordingly, we affirm his conviction and sentence.
AFFIRMED.
NOTES
[*] Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), abrogated the rule of Aguilar/Spinelli for determining whether an informant's tip establishes probable cause for issuance of a warrant and substituted a "totality of circumstances" approach. It therefore seems appropriate to review the actions of the officers herein based on the totality of the circumstances per Illinois v. Gates.